CHICAGO—FIRST DISTRICT—JUNE, 1909.   499

Stollery and Symmes v. Cicero and Proviso St. Ry. Co., 148 App. 499.

## Arthur G. Stollery and Thomas J. Symmes, Administrators, Appellees, v. Cicero and Proviso Street Railway Company et al., Appellants.

### Gen. No. 14,524.

1. NEGLIGENCE—*when maintenance of attractive nuisance constitutes.* *Held,* under the evidence, that the maintenance and operation in a thickly settled neighborhood on a block of land that was unfenced and unguarded, of coal-conveying machinery consisting of a frame work, chains, sprocket-wheels and other appliances that were dangerous, constituted negligence which would sustain a recovery by a young child injured in consequence.

2. EVIDENCE—*when verdict of coroner's jury competent.* *Held,* that the verdict of a coroner's jury received in evidence in this case, was competent as tending to prove that the plaintiffs' intestate came to his death on a particular day by being caught and crushed by the defendant's machinery.

3. ORDINARY CARE—*how proof of, may be made in the absence of eye witnesses to the accident.* Where there were no eye witnesses to the killing of a person, his administrator in an action for damages may establish the exercise of ordinary care on the part of the deceased by the highest proof of which the case is capable, including the habits of the deceased and facts and circumstances from which the jury may rightfully find that he was in the exercise of such care, and in determining such question the jury may take into consideration the natural instinct that prompts every person to preserve life and avoid danger.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed June 4, 1909.

**Statement by the Court.** In an action on the case for wrongfully causing the death of plaintiffs' intestate, a boy ten years of age, plaintiffs had judgment for $4,000 and the defendants appealed.

Defendants occupied a block bounded by Lake street on the north, Harvey avenue on the east, North boulevard on the south, and Cuyler avenue on the west. In the southeast corner of the block was the power house of the defendants; west of the southern part of the

power house was a building twelve feet wide and thirty feet high called a coal bin. At the north end of the coal bin was a frame work made of timbers ten inches square which carried and supported certain sprocket wheels which formed a part of a coal conveyor. This frame work was eight feet long from north to south, three and a half feet wide and three feet high. It consisted of two beams placed three feet' apart, of cross beams at each end of said side beams, which beams formed the top of the structure, of posts which supported the beams and of sills on which the posts rested. At each end of the frame work was a pair of sprocket wheels attached to a driving shaft. On the end of the coal bin twenty feet above the ground was another pair of sprocket wheels on a shaft. The conveyor proper consisted of two endless chains between which ran strips of metal which scraped and carried the coal from the coal bin to the power house. The conveyor proper came out of the north end of the coal bin, passed over the sprocket wheels which were attached to the coal bin, thence down and over the sprocket wheels which were on the frame work next to the coal bin, thence out from the coal bin to and over the sprocket wheels which were at the outer end of the frame work, thence just above the ground back into the coal bin, and thence on the floor of the coal bin to the power house.

The sprocket wheels were thirty-one inches in diameter with teeth three inches long. Each of the sprocket wheels next to the coal bin was placed inside of and two inches from a beam. Nearly one-half of the wheel was above the beam and they came within eight inches of the north wall of the coal bin towards which they revolved. The frame work with its machinery could be seen from the street and access to it from the street was open and unobstructed.

Plaintiffs' intestate was last seen alive on the afternoon of March 2, 1904. March 4th, he was found dead, his body wedged between the sprocket wheel which was inside of the west beam next to the coal bin and

the coal bin, with one arm between said sprocket wheel and the beam inside of which it revolved. When found his body was frozen, his clothing torn and one side of his face had been worn away by the rubbing of the sprocket wheel against it.

The declaration alleged that the defendants negligently, etc., left said machinery and appliances unguarded and unprotected; that, as defendants knew, children had been in the habit of playing about said machinery and appliances; that plaintiffs' intestate was attracted to said machinery and appliances by childish curiosity, and that while in the exercise of ordinary care for his own safety he was caught by said sprocket wheel and killed on the second of March, 1904.

JOHN A. ROSE and FRANK L. KRIETE, for appellants; W. W. GURLEY, of counsel.

DAVID K. TONE and H. M. ASHTON, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

The declaration alleged and the evidence for the plaintiffs tended to prove that on and for a long time before March 2. 1904, the defendants maintained and operated in a thickly settled neighborhood, on a block of land that was unfenced and unguarded, certain coal conveying machinery consisting of a frame work, chains, sprocket wheels and other appliances that were dangerous; that young children had for two years before that time been in the habit of playing on and about said machinery, and that said structure and machinery were attractive and alluring to children and dangerous.

The rule of law applicable to such cases is thus stated in Pekin v. McMahon, 154 Ill. 141-148:

"Where the land of a private owner is in a thickly settled city, adjacent to a public street or alley, and. he has upon it, or suffers to be upon it, dangerous

machinery, or a dangerous pit, or pond of water, or any other dangerous agency, at a point thereon near such public street or alley, of such a character as to be attractive to children of tender years, incapable of exercising ordinary care, and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury, when coming upon said premises, even though they may be technical trespassers.''

Appellants insist that if the negligence alleged in the declaration is proved, still the verdict is against the evidence and not supported by the evidence: First, because it does not appear that the negligence proved was the proximate cause of the death of plaintiffs' intestate; second, because it does not appear that the deceased was in the exercise of reasonable care; third, that it does not appear that the deceased was attracted to defendants' premises by said coal conveyor; and fourth, that it does not appear that deceased died from injuries sustained by him in said conveyor.

The following coroner's verdict was produced by a deputy coroner who testified that he took it from a vault in the coroner's office, and over the objection of defendants it was admitted in evidence:

''State of Illinois, ⎫ ss.
   County of Cook. ⎰

An inquisition was taken for the people of the State of Illinois at 135 Lake street in the village of Oak Park, in the said county of Cook, on the 5th day of March, A. D. 1904, before me, John E. Traeger, Coroner, in and for said county upon view of the body of Thelmer Washington Letts, then and there lying dead, upon the oaths of six good and lawful men of said county, who being duly sworn, to inquire on the part of the people of the State of Illinois into all the circumstances attending the death of said Thelmer Washington Letts, and by whom the same was produced and in what manner and when and where the said Thelmer Washington Letts came to his death do say, upon their

oaths as aforesaid, that said Thelmer Washington Letts, now lying dead at 135 Lake street in said village of Oak Park, county of Cook and State of Illinois, came to his death on the 2nd of March, 1904, from shock and injuries caused by being caught and crushed by the wheel and beam of the coal conveying machinery owned and operated by the Chicago Consolidated Traction Company at their plant at Harvey and Lake street, A. D. 1904.

In testimony whereof, the said coroner and the jury of this inquisition have hereunto set their hand the day and year aforesaid.

(Signed) M. A. McQUEEN,

Foreman.

W. C. REAM,
GEORGE HARGES,
C. REESE,
GEORGE H. REESE,
A. N. SNYDER.
JOHN E. TRAEGER (SEAL),
Coroner."

We think the verdict was properly admitted in evidence (U. S. Life Ins. Co. v. Voeke, 129 Ill. 357), and that it is competent evidence tending to prove that the deceased came to his death March 2, 1904, by being caught and crushed in the coal conveying machinery of the defendants.

The other evidence tending to show how deceased came to his death is circumstantial. A witness testified that she saw the deceased in the afternoon of March 2nd, standing near the coal conveyor which was not then in motion, leaning over and looking into it. We think the jury might from the evidence properly find that the deceased was not seen alive after he was seen standing by the conveyor. Other children were attracted to the conveyor, and had been in the habit of playing on and about it. The conveyor was operated by electricity and was set in motion by an operator inside of the coal bin who could not, from the place where he turned on the current, see the frame work outside of the coal bin. The conveyor was set

in motion soon after the deceased was seen standing by it. The position in which his body was found and his torn clothing would seem to indicate that the deceased was caught by the sprocket wheel and his body thereby crowded and forced into the position it was in when found. The verdict of the coroner's jury in terms states that he came to his death: "by being caught and crushed by the wheel and beam of the coal conveying machinery" of the defendants.

The deceased had lived in the vicinity of the premises in question but one day prior to March 2nd. There was a well on the premises to which children were in the habit of going for water. A little girl who lived in the building in which the deceased and his mother lived testified that she went to the well for water, that deceased followed her and then went over to the coal conveying machinery, and when the witness last saw him he was standing by said machinery looking into it. There was, as has been said, evidence that other children had been in the habit of climbing on said frame work when the machinery was in motion; that boys used to pull and play around the chains. The machinery was not in motion when the deceased went to it, but not long afterwards was set in motion.

The deceased was an intelligent and ordinarily careful boy ten years old. He could readily climb upon the frame work, which was only three feet high. If he was on the frame work, or in a position, when the machinery was set in motion, where his clothing was caught by the sprocket wheel, the revolving of that wheel, driven by electricity, might readily force his body into the position in which it was found, and cause such injuries to his face as he sustained.

We think that from all the evidence the jury might properly find that the defendants were guilty of the negligence alleged in the declaration in respect to said conveyor; that plaintiffs' intestate came to his death in the manner alleged in the declaration, and that the negligence of the defendant was the proximate cause of his death.

Where there are no eye witnesses to the killing of a person his administrator, in an action for damages, may establish the exercise of ordinary care on the part of the deceased by the highest proof of which the case is capable, including the habits of the deceased and facts and circumstances from which the jury may rightfully find that he was exercising such care. Collison v. I. C. R. R. Co., 239 Ill. 532, and cases there cited. There was in this case testimony that the deceased was an intelligent and ordinarily careful boy. We think that from the evidence, taking into account the natural instinct that prompts every person to preserve life and avoid danger, the jury might properly find that the deceased was in the exercise of reasonable care for his own safety. The contention of appellant that the verdict is against the evidence cannot, therefore, in our opinion, be sustained.

We find no reversible error in the rulings of the court on questions of evidence or in the refusal to give the instructions asked by the defendants which were refused.

Finding in the record no reversible error, the judgment of the Circuit Court will be affirmed.

*Affirmed.*