JOHN B. MATH, Admr., Appellee, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Appellant.

*Opinion filed December 22, 1909.*

1. STREET RAILWAYS—*both the carrier and passenger must use greater care if passenger's position is dangerous.* If a street car company permits a passenger to ride on the foot-board of the car the company is required to use greater precautions to avoid injuring him than if he were riding in a safer place; but the passenger is also required to pay more attention to his.surroundings and use more care for his safety than if he were occupying a seat.

2. SAME—*if standing on the foot-board is, in fact, negligence, there can be no recovery.* While there is no rule of law that standing on the foot-board of a street car is, of itself, negligence on the part of a passenger, yet if the circumstances are such that it is an act of carelessness on his part to stand on the foot-board, or if he fails to exercise such care as a person of ordinary prudence would exercise in the same position, there can be no recovery if he is injured.

3. TRIAL—*plaintiff is entitled to benefit of all evidence favorable to him on motion to direct a verdict.* Upon a motion to direct a verdict for the defendant in a personal injury case the plaintiff is entitled to the benefit of all evidence favorable to him, whether produced by him or by the defendant, and if such evidence fairly tends to prove his cause of action as alleged, the motion should be denied and the case submitted to the jury.

4. SAME—*the court should strike out answers not responsive to questions.* Where a witness who has testified to a certain fact on direct examination is asked, on cross-examination, whether he did not testify to another fact on a former trial, but he insists upon attempting to state what occurred instead of answering the question, the court should strike out his unresponsive answers on motion.

5. SAME—*party has right to ask questions to lay foundation for proving contradictory statement.* Where a witness for the plaintiff testifies to a certain fact on direct examination, the defendant is entitled to ask him whether he did not testify to a different fact on a former trial, and it is error for the court to refuse to allow such a question to be put without the question and answer at the former trial being repeated verbatim to the witness.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JOHN E. KEHOE, and C. LEROY BROWN, for appellant.

CHARLES M. FOELL, MARVIN E. BARNHART, and EARL. J. WALKER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John B. Math, administrator of the estate of Charles A. Rietzl, deceased, sued the Chicago City Railway Company and Joseph Stockton & Co., corporations, in the superior court of Cook county, to recover damages sustained by the father and mother of said Rietzl by his death. The declaration alleged that Rietzl was a passenger on a street car of the Chicago City Railway Company; that said company negligently managed and controlled the car and operated

it at a careless and reckless rate of speed, and Joseph Stockton & Co. so carelessly managed, drove and controlled its team of horses hitched to a wagon that the wagon and car collided; that Rietzl was caught between the car and the wagon and was knocked from the car to the ground and injured, and that he died as a result of such injuries. The defendants pleaded not guilty, and on a trial the jury found Joseph Stockton & Co. not guilty and the Chicago City Railway Company guilty and assessed damages against the latter. No judgment was entered on the verdict as to Joseph Stockton & Co. and nothing further was done as to that defendant, but there was judgment on the verdict against the Chicago City Railway Company, which was reversed by the Appellate Court for the First District. The case was again tried against the railway company as sole defendant, resulting in a verdict of guilty, fixing the damages at $5000. Judgment was entered on the verdict, and the Branch Appellate Court for the First District affirmed the judgment, and the record has been brought to this court by further appeal.

At the close of the evidence the defendant asked the court to direct a verdict of not guilty, which the court refused to do.

The following facts were proved and not disputed: The defendant has double street car tracks in Clark street, which are laid at the west side of the street, from Fifteenth street north to Twelfth street, close to a high brick wall, and the east track is for north-bound cars. There are no street intersections between Sixteenth and Twelfth streets, and the only street coming into Clark street from the east is Fourteenth street, which does not cross Clark street. The accident occurred on Clark street a little south of Fourteenth street. Where that street comes into Clark street the south-east corner is occupied by the Erie railway freight office, which comes up to the building line for about fifty feet south from the corner, and from that point there is

a jog in the building eastward of twenty-five feet to the freight house. The car tracks being on the west side of the street, there is an open roadway eighteen feet wide between the tracks and the curb, and opposite the freight house there is an open paved space connecting with the roadway. At about one o'clock in the daytime of a clear, hot day a car of the defendant was coming north toward that corner. It was an open summer car, with seats extending clear across and no aisle in the center, and the seats were reached by stepping up on the foot-board. Rietzl, who was fourteen years old, and a companion of about the same age, got on the street car at Twenty-fourth place and stood on the foot-board on the east side. Their fares were paid by Rietzl, and the conductor at that time requested them to step inside the car and take seats, but they made no reply and did not do so. As the car was approaching Fourteenth street a team of horses of Joseph Stockton & Co. drawing a stake truck-wagon came into Clark from Fourteenth street and turned south, going to a door in the freight house some distance south of the corner. The truck was empty and the team came along on a trot. As the team turned into Clark street the car was about two hundred and forty feet south of it, and the car continued to run at the usual rate of speed until there was a collision. The boys had been standing on the foot-board all the way from Twenty-fourth place, and Rietzl stood at a post at the end of the fourth seat from the front of the car and his companion was a little further back. The boys were both knocked from the foot-board by the rear end of the truck wagon, and Rietzl died.

The disputed questions of fact were, whether there were vacant seats on the car when the boys got on the foot-board or afterward; whether they were moving back and forward or giving any attention to their surroundings; and whether the team was in front of the car as they approached each other, or the truck was at a safe distance

east of the railroad track and the team suddenly turned to the east and the wheels slid around so as to bring the rear of the truck in contact with the car. The plaintiff's theory was that there were no seats on the car; that the team, in coming into Clark street, crossed the open space of eighteen feet of roadway so that the west wheels of the wagon were over the east rail of the track; that the motorman was guilty of negligence in not stopping the car; that the driver of the truck-wagon attempted to turn out to the east, and his team was headed south-east toward the freight house and had not cleared the track when the car struck the wagon. The boy who was with Rietzl testified that the front part of the car was crowded, but he did not turn around and look in the rear. A woman said that she sat in the third seat from the rear and her husband sat beside her with their little boy on his lap and their little girl sat on the suit-case at their feet, but she did not remember whether there were any unoccupied seats on the car. A passenger who got on at Thirtieth street said that the car was then filled so that he and his companion were separated and took different seats, and the car was filled all the way down; and another passenger who got on at Fifty-fifth street said he thought the seats were occupied, but was not sure. W. Fletcher, a witness again mentioned hereafter, said that he got on the car at Archer avenue and there were then no unoccupied seats but a man got off at Sixteenth street and he took the vacated seat. On the other hand, five witnesses who were passengers testified that there were vacant seats in the car, and three of them, one of whom sat near the rear of the car and the others near the front, testified that the seats in which they sat were not full. The conductor testified that there were five or six vacant seats from the middle to the front of the car.

On the question of negligence of the motorman, the witness W. Fletcher testified that from the time he saw the team coming out of Fourteenth street he looked at the

team the whole time and did not lose track of them; that
the west wheels of the truck were over the east rail of the
track; that the first thing that struck the wagon was the
metal dash-board on the front of the car giving a sort of
click, and then the rear of the truck struck the post on the
side, and that when the car collided with the wagon the
team of horses were at an agle of forty-five degrees, facing
south-east.   The teamster said that he pulled over to the
east side and the front wheel caught in the rail and the
right hind wheel followed up the front wheel, and in pull-
ing out to avoid the car the hind stake of the hind end of
the wagon struck the car.   A witness for plaintiff, sitting
in a window of the freight office, said that the west wheels
of the wagon were in the east rail of the track; that the
teamster turned out, and the wagon struck the car some-
where near the forward part but not in front of the car.
He was positive that the hind end of the wagon came in
contact with the side of the car and said it did not strike
the front of it at all.   A passenger thought the part of the
car that came in contact with the wagon was the first post.
There was no mark at all on the dash-board or any evi-
dence of injury to it, and the only mark on the car was a
dent on the second post.   On the part of defendant three
passengers testified that the front end of the car passed the
wagon with at least three feet of space between them, and
two of them sat where the wagon passed them.   The other
passenger said that the truck was about three feet from
the car when the front end of the car had passed the hind
part of the wagon; that the team headed south-east and
the wheels of the wagon slid, bringing the hind part of the
truck against the post of the car.   The motorman testified
that as the team approached it was about four feet east of
the track; that there was no time when it was any closer
than that to the track; that no part of the team or wagon
was on the track at any time, and that after the wagon
passed he heard a noise at the side of the car.

It is conceded that there was evidence tending to prove negligence of the motorman and that there were no vacant seats on the car, but it is contended that Rietzl was guilty of contributory negligence, as a matter of law, in exercising no care for his own safety while standing on the foot-board. In considering that question any discussion whether the defendant was guilty of negligence in not furnishing seats is entirely beside the issue, since the failure, if there was one, was not charged as negligence in the declaration. Neither is there any controversy as to the fact that Rietzl was a passenger. The conductor received his fare, and although he was told to step inside and take a seat he was permitted to ride on the foot-board as a passenger. The foot-board is not furnished for ordinary use in riding on cars, but it is universally known that there are times when street cars are so crowded with passengers that some are compelled to ride on the foot-board or not reach their business or homes at all. Such conditions furnish an excuse for standing on a foot-board, so that there is no rule of law that standing in such a place constitutes, in itself, negligence on the part of a passenger. (*North Chicago Street Railroad Co.* v. *Polkey,* 203 Ill. 225.) If the circumstances are such that standing on the foot-board is an act of carelessness on the part of a passenger, or there is a failure to exercise such care as persons of ordinary prudence would exercise in the same position, there can be no recovery. (*Hewes* v. *Chicago and Eastern Illinois Railroad Co.* 217 Ill. 500.) The fact that a street car is crowded so that a passenger must stand on the foot-board if he rides at all does not render the foot-board a safe place to ride any more than if the car were empty. The defendant having accepted Rietzl as a passenger on the foot-board became bound to exercise toward him the high degree of care required of carriers of passengers, and the more dangerous the position of a passenger, if it is assented to by the carrier, the greater precautions the carrier is bound to observe.

At the same time the law imposes on the passenger the duty of observing for his own safety the degree of care that a person of ordinary prudence would observe while riding on a foot-board, and it is obvious that the attention of the passenger to the surroundings and precautions to avoid danger would be greater than when occupying a seat in a place of comparative safety. The attention and circumspection to avoid injury required of both parties is to be measured by the situation of the passenger and the dangers connected therewith. There was some evidence that the boys were moving back and forth on the foot-board and there was no evidence as to what either of them was doing at the time of the accident, but on the motion to direct a verdict the plaintiff was entitled to the benefit of all evidence favorable to him, whether produced by him or the defendant, and the evidence for the defendant tended to prove that there was no fault or negligence on the part of either Rietzl or the defendant, unless Rietzl was guilty of negligence in being on the foot-board at all, and that was a disputed question of fact. That evidence was that the truck was passing at a safe distance from the car and that the injury arose from the turning of the team and the sliding of the wheels while passing the car, and in view of that evidence the court did not err in refusing to direct a verdict.

The witness Fletcher was the only one who testified that the truck struck the front of the car, and he was the chief witness for the plaintiff on the controverted questions of fact. He had been a witness as to the occurrence twice before, and after testifying on direct examination that from the first time he saw the team coming out of Fourteenth street he looked at the team the whole time and did not lose track of them, he was asked, on cross-examination, if at the second time he was a witness he did not testify that he lost sight of the team for a little while and then saw them coming toward the south-east. Instead of an-

swering the question he commenced to state what did actually occur. He was stopped by the attorney for defendant, who again put the question whether he had testified on the second trial that he had lost track of the team and wagon for a little while. He again commenced to state the facts, and on objection the court directed him to answer. He did not answer the questions but persisted in stating what he saw. The answers were objected to as not responsive to the questions and the court refused to strike them out. The court finally interrupted and refused to permit further impeaching questions unless the question and answer at the former trial were repeated verbatim to the witness. Where an answer is not responsive to the question put it is the duty of the court to strike it out, on motion. (8 Ency. of Pl. & Pr. 134.) The witness having testified on direct examination that he kept track of the team all the while, it was material and important to show that he testified on a former trial that he lost sight of them for a time. (*Chicago West Division Railway Co.* v. *Ingraham,* 131 Ill. 659.) It was not necessary to repeat the question propounded and the answer made on the former trial, and the court erred in interrupting the examination and laying down that rule. (*Brown* v. *Calumet River Railway Co.* 125 Ill. 600.) The defendant was entitled to prove the contradictory statement and to lay the foundation by asking questions of the witness. (*Chicago City Railway Co.* v. *Matthieson,* 212 Ill. 292; *Reisch* v. *People,* 229 id. 574.) It will be seen from the foregoing statement of the testimony of the various witnesses and the controversy as to whether the truck was in front of the car or at a safe distance east of it that the error was material and prejudicial. It surely cannot be said that the verdict of the jury must necessarily have been the same if the court had ruled correctly and permitted the examination of the witness in a matter materially affecting his credibility.

The court gave an instruction stating, in abstract form, the duty of a street railway company to use the highest degree of care and caution consistent with the practical operation of its road to provide for the safety and security of passengers while being transported, and it is contended that the instruction, although correct as a general rule, was misleading as applied to the facts of this case, in ignoring the claim of the defendant that it provided a safe and convenient place for Rietzl to ride on the car and that he voluntarily assumed a place of danger. The instruction was correct as far as it went, and it was supplemented and the law on the subject was presented in complete form to the jury by instructions given on the part of the defendant. The instructions, taken together, correctly applied the rules of law to the theories of the respective parties.

For the errors indicated in this opinion the judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*