**Morris Novitsky, Administrator, Appellee, v. Knickerbocker Ice Company, Appellant.**

**Gen. No. 18,004.**

1. EVIDENCE—*discrediting witness by his testimony before coroner's inquest.* Plaintiff's intestate, a boy of seven years of age, was run over and killed by an ice wagon at the intersection of two streets crossing at right angles, and the conjunction of a third street, there being a cross-walk, defined by flagstones, between such third street and the west line of one of the other streets. Plaintiff contended that his intestate, while crossing on or immediately west of such cross-walk was killed by the wagon coming at a fast trot. Defendant claimed that the accident happened 50 to 75 feet west of said cross-walk, that the wagon was driven at a slow trot, and that the boy suddenly darted out from around the rear end of a standing car, standing on such third street, in front of the moving team. A witness for plaintiff testified that there was no car standing on such track, that the boy was walking north on the flagstone cross-walk, that after the boy was struck, the wagon stopped within about fifty feet and that the driver looked as if he were intoxicated. On cross-examination such witness was asked, for the purpose of discrediting his testimony, whether he had not testified before the coroner that the boy was crossing northeast on such third street, that the wagon came to a stop ten or fifteen feet after the accident, that in his opinion the driver was sober, and that there was a car standing on such third street. *Held,* that refusal to allow answers was error.

2. CORONERS—*verdict admissible.* In an action for wrongful death, the verdict of the coroner's jury is admissible as evidence to be considered but not conclusive.

Novitsky v. Knickerbocker Ice Co., 180 Ill. App. 188.

3. CORONERS—*evidence before, admissible to discredit witness.* Where a witness in an action for wrongful death has testified to certain facts, such parts of his original testimony at the coroner's inquest as show him to have made different statements there, are admissible to discredit him, but other portions are properly excluded.

4. INSTRUCTIONS—*must be accurate when evidence conflicting.* Where the evidence is very conflicting on material points it is particularly important that the instructions should be accurate.

. Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed May 8, 1913. Rehearing denied May 22, 1913.

AMOS C. MILLER and BENJAMIN O'HARA, for appellant.

CLARENCE S. DARROW and EDGAR L. MASTERS, for appellee; EDGAR L. MASTERS, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This action was brought by appellee to recover damages from appellant, defendant below, for causing the death of Samuel Novitsky, a boy under seven years of age, on the evening of October 5, 1903. The boy was run over on Archer avenue, Chicago, by a wagon owned and operated by defendant. It was charged that the accident happened by reason of the negligence of the driver of the wagon, while the boy was crossing Archer avenue, at or near its intersection with State street, and while he was exercising due care for his own safety. The first trial of the case resulted in a disagreement of the jury. On the second trial the jury found the defendant guilty and assessed plaintiff's damages at $4,000. This appeal is prosecuted to reverse the judgment entered upon that verdict.

State street runs north and south and 19th street runs east and west, intersecting State street at right

Novitsky v. Knickerbocker Ice Co., 180 Ill. App. 188.

angles. At this intersection Archer avenue commences, running in a southwesterly direction from State street. At the time of the accident there was a frame building on the northwest corner of State and 19th streets used for a saloon. At the southwest corner of State street and Archer avenue there was a drug store. A cross-walk, defined by flagstones, ran north and south (in line with the west sidewalk of State street) from the drug store to the saloon. This cross-walk from curb to curb was about 115 feet in length and passed over the space made by the conjunction of Archer avenue and 19th street with State street. About 60 feet west of this cross-walk there was a frame "flat-iron" building between 19th street and Archer avenue. The sidewalk south of this building (being the north sidewalk of Archer avenue) came into conjunction with the sidewalk north of this building (being the south sidewalk of 19th street) east of said building, and there both sidewalks ended, the most easterly part of which was about 30 feet west of the cross-walk above mentioned. There were two street car tracks in State street. Connecting with these tracks were two other tracks which turned into Archer avenue. For some distance west of State street, Archer avenue was paved with asphalt.

The deceased lived with his parents at No. 1824 State street, a location north of 19th street. The father of the boy ran a tailor shop at No. 1916 State street, a location south of Archer avenue. About four o'clock in the afternoon the boy, returning from school, stopped at his father's shop, where he remained until about 5:45 P. M., when he started for his home unaccompanied. While going across Archer avenue in a northerly or northeasterly direction on or west of said cross-walk, and when he was just north of the north street car track in Archer avenue, he collided with the south horse of the team of defendant, was thrown down and one or both of the left

wheels of the wagon passed over his body and he suffered injuries from which he died in a few minutes. The team of defendant, approaching from the north on State street, had turned into Archer avenue and was moving in a southwesterly direction in that street at the time of the accident. The testimony of the several witnesses as to the details of the accident is very conflicting. It is plaintiff's contention that the boy was injured while he was crossing Archer avenue on, or immediately west of, said cross-walk and while defendant's team was being driven at a fast trot. It is defendant's contention that the accident happened 50 to 75 feet west of said cross-walk; that defendant's team was being driven southwesterly in Archer avenue, immediately north of the north track in that street, at a slow trot; that there were one or two street cars standing on Archer avenue immediately west of said cross-walk; that the boy suddenly "darted out" from around the west end of said standing car or cars in front of the moving team, which could not be stopped in time to prevent the accident.

The conclusions that we have reached will require a retrial of the case, and hence we should not give an opinion as to the weight of the evidence.

Counsel for defendant contend that the trial court erred in refusing to allow plaintiff's witness, Joseph F. Golden, to answer certain questions asked of him on cross-examination for the purpose of discrediting his testimony on material facts. Golden had testified, *inter alia,* that at the time of the accident he was standing on the curb at the northwest corner of State and 19th streets, that there was nothing to obstruct his view down Archer avenue and that there were no street cars standing on Archer avenue west of the cross-walk; that the boy was just north of the north track on Archer avenue, walking *north* on the flag-stone cross-walk; that after the boy was struck the wagon went *about 50 feet;* that both the driver and

his companion on the front seat "looked to me like they were intoxicated." On cross-examination the witness was asked the following questions:

"Q. Did you testify before the coroner's inquest that the boy was going across the street *northeast* on Archer avenue towards State street when he was hit?

Q. Did you at the coroner's inquest testify that the wagon came to a stop *10 or 15 feet* after the boy was struck?

Q. Did you testify at the coroner's inquest that in your opinion the driver was *sober* at the time of the accident?

Q. Did you testify as follows on the former trial: 'Q. Were there any cars standing on Archer avenue at that time? A. There was one car on the south track waiting for a grip-car that was going north, to be attached to the grip-car.' ".

The court, on objection being made, refused to allow the witness to answer any of these questions and defendant excepted. We are of the opinion that the court erred in so ruling. *Math v. Chicago City Ry. Co.,* 243 Ill. 114, 122; *Chicago City Ry. Co. v. Matthieson,* 212 Ill. 292; *Craig v. Trotter,* 252 Ill. 228.

Counsel for defendant also contend that the court erred in refusing to admit in evidence the *entire* deposition of Golden, taken at the coroner's inquest on October 6, 1903. The original deposition, or written statement, purporting to be signed by him, was shown him on cross-examination, and he testified that he signed "that sheet," that he did not remember whether or not the statement had been read over to him by the coroner before he signed it, but that he might have said, on the former trial of this case, that he believed the statement was read over to him before he signed it. At the conclusion of the testimony offered on behalf of plaintiff, defendant's attorney submitted to the court "the original document which came from the coroner's office," and offered in evidence the following, contained in said statement of Golden which he had previously testified that he had signed, viz.: "I do

think that the driver was sober," and "The boy was walking across the street going northeastward on Archer avenue towards State street." On objection being made, the court refused to admit in evidence the above portions of the statement. Defendant's attorney then offered in evidence "the whole statement" of Golden before the coroner, but on objection its admission in evidence was refused and defendant excepted. The above portions of the statement of Golden, being contradictory on material points to his sworn testimony on the trial of this case, were proper to be introduced in evidence as tending to discredit him as a witness. *Illinois Cent. R. Co. v. Wade,* 206 Ill. 523, 529. But, in our opinion, this error in the court's ruling as to said portions of the statement was cured by the subsequent proceedings in the trial. At the conclusion of all the evidence, plaintiff's attorney, evidently realizing that said portions of Golden's statement offered by defendant should have been received in evidence, stated to the court out of the hearing of the jury that "the record may show that we withdraw our objection to the offering in evidence of that part of the statement offered by counsel for defendant of the witness Golden,—the statement being the one he made and signed before the coroner's jury and about which he was asked on cross-examination with a view of impeachment. I do not understand the whole statement is offered,— only those portions of it. As to those our objections are withdrawn." Defendant's attorney then read to the jury the portions above mentioned of Golden's statement before the coroner, but defendant's attorney did not then again urge that the *entire* statement should be read to the jury, neither did he then urge that certain other portions of Golden's statement be read to the jury, which other portions he now claims were also material as tending to discredit Golden's testimony on the trial, and on that account the entire statement should have been admitted. Those other portions are:

"After the accident the wagon went about 10 or 15 feet and came to a stop when the driver jumped off," and "There was an Archer Ave. car waiting on Archer Ave." We are not disposed to hold, under the facts of this case, that the *entire* statement should have been admitted in evidence. It was quite lengthy and contained much matter which had no tendency to contradict Golden's testimony. The portions which did contradict his testimony were admissible. *Illinois Cent. R. Co. v. Wade, supra; Jacobs v. Electric Coal Co.,* 158 Ill. App. 286, 288. And such portions as were offered by defendant's attorney were finally admitted in evidence.

At the commencement of the introduction of evidence on behalf of defendant, a certified copy of the *verdict* of the coroner's jury was offered by defendant's attorney. Objection to its introduction was made and the court reserved its ruling. Later on in the trial defendant's attorney renewed his offer. The introduction of the paper was objected to as being "incompetent, irrelevant and immaterial" and the objection was sustained. Defendant's attorney then offered "the last sheet of the original files of the coroner's records" (the verdict), and its admission was also refused, to both of which rulings defendant excepted and the same are assigned as error. The verdict is signed by the members of the jury and by the coroner, and says that the deceased came to his death "from shock and crushing injuries received, caused by being struck by a horse and run over by the two left hand wheels of ice wagon #214 belonging to the Knickerbocker Ice Co. and driven by Martin Johnson on Archer Ave. near the cor. of State and 18th Sts. on October 5th, A. D. 1903. And from the evidence presented to us this jury finds that had the C. C. S. R. W. Co. not blockaded Archer Ave. with cars on both sides of street crossing this accident would not have occurred and deceased not lost his life in such a manner, and in this respect censure the above named company."

Section 14 of chapter 31 of our statutes, relating to the duty of coroner's jurors, provides:

"It shall be the duty of the jurors, as sworn aforesaid, to inquire how, in what manner, and by whom or what, the said dead body came to its death, and of all other facts of and concerning the same, together with all material circumstances in anywise related to or connected with the said death, and make up and sign a verdict, and deliver the same to the coroner."

In *U. S. Life Ins. Co. v. Vocke*, 129 Ill. 557, 566, it is said:

"We are satisfied, both upon principle and authority, that the coroner's inquisition was admissible in evidence. The inquisition was made by a public officer, acting under the sanction of an official oath, in the discharge of a public duty enjoined upon him by the law, and * * * we see no reason why it should not be competent evidence tending to prove any matter properly before the coroner which appears upon the face of the inquisition. We do not hold that such evidence is conclusive, but only that it is competent evidence to be considered."

The coroner's verdict in this case states that the boy was struck when "on Archer Ave. *near* the cor. of *State* and 18th Sts.," and also states, in effect, that Archer avenue was at the time blockaded with cars on both sides of the street crossing. There was a sharp conflict in the testimony of the witnesses at the trial of this case as to just where the boy was when struck, whether on the crossing or west of it, and whether or not at the time there were cars standing west of said cross-walk. We think it clear that defendant was entitled to have the verdict of the coroner's jury admitted in evidence and that the trial court erred in refusing to admit it. See also *National Woodenware & Cooperage Co. v. Smith*, 108 Ill. App. 477, 479; *Stollery v. Cicero & P. St. Ry. Co.*, 148 Ill. App. 499, affirmed 243 Ill. 290, 294; *O'Donnell v. Chicago & A. R. Co.*, 127 Ill. App. 432.

Complaint is made of certain instructions offered by

plaintiff and given to the jury. Where the evidence is very conflicting on material points, as in this case, it is particularly important that the instructions should be accurate. *Lyons v. Ryerson & Son,* 242 Ill. 409, 416. We are of the opinion that some of the instructions complained of were not strictly accurate, but we deem it unnecessary further to extend this opinion by discussing them. Complaint is also made of certain statements made by the attorney for plaintiff in his closing argument to the jury. We do not think that they were proper, but on the new trial they doubtless will not be repeated.

The judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*