The Illinois Central Railroad Company

*v.*

George F. Wade.

*Opinion filed December 16, 1903—Rehearing denied February 4, 1904.*

1. Evidence—*admissibility of contradictory statements of witness made out of court.* Statements of a witness made out of court, orally or in writing, if contradictory of a material point in his testimony in court, may be introduced in evidence after sufficient foundation is laid, as tending to discredit the witness.

2. Same—*what a sufficient foundation where statement of witness is in writing.* A sufficient foundation for the introduction of a contradictory written statement signed by the witness is laid by showing the paper to him, allowing him to inspect and read it if he desires, and proving by him or others that his signature is genuine.

3. Same—*when impeaching proof must be permitted to go in.* Where a proper foundation has been laid for the introduction of impeaching proof, if the witness admits that he made the contradictory statements imputed to him, as fully as is claimed, further proof of such fact may not be necessary, but if he denies or does not directly admit that he made the statements the impeaching proof should be permitted to be given.

4. Same—*when general objection will not suffice.* A general objection to the admission in evidence of a writing offered as impeaching proof does not present for review the question whether part of the statements contained therein were inadmissible, as being mere opinions, if the writing was admissible for any purpose.

*Illinois Central Railroad Co.* v. *Wade,* 108 Ill. App. 423, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

W. A. Howett, (J. G. Drennan, of counsel,) for appellant.

Moses, Rosenthal & Kennedy, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

In an action on the case brought in the circuit court of Cook county to recover damages for a personal injury inflicted, as it was alleged, through the negligence of

a servant of the appellant company, the appellee was awarded judgment in the sum of $7000, and the same was affirmed in the Appellate Court for the First District, hence this appeal.

In order that disposition be made of the assignment as for error that the court improperly excluded certain testimony tendered by the appellant company, it will be necessary to briefly refer to the facts.

On the 20th day of July, 1900, a force of workmen called a "bridge gang," of which the appellee was a member and which was under the control of a foreman and an assistant foreman, all being employees of the appellant company, were engaged in the construction of an iron bridge across a small stream on the line of appellant's railroad near Denison, Iowa. In the work were employed a small stationary steam engine and a derrick, both of which were placed upon a flat-car, by means of which a boom, for the purpose of raising and lowering heavy material, and a runner line for handling lighter material, were operated. To the end of the runner line was attached a metal ring and two clamps, of the aggregate weight of forty or fifty pounds. In the prosecution of the work it was necessary that the boom, runner line and clamps should be shifted from side to side of the bridge as often as once in each two or three minutes during the day. While standing upright on one of the girders on the west side of the bridge, a point some six or seven feet higher than the floor beams of the bridge, the appellee was struck by the ring and clamps, which, with the boom, were being swung from the east, and knocked from the bridge to the ground, a distance of about eighteen feet, and thereby received the injuries for which the judgment was awarded. The appellee had been in the employ of the appellant company as a bridge man in this bridge work for several years, and previous thereto had served in the capacity of a bridge carpenter for other railroad companies for a number of years.

One of the defenses presented by the appellant company was that the injury was occasioned, or materially contributed to, by the failure of the appellee to exercise ordinary care for his own safety.   There was a conflict in the evidence on the question whether it was usual and customary to raise the boom when swinging it across the bridge, so that the clamps would not hang down low enough to strike a man standing upright on the bridge. The testimony produced on behalf of the appellant company was, that the work of repairing or building bridges was necessarily carried on during the time intervening between the passage of trains, and that, consequently, the work was customarily carried on in haste;  that it was necessary to shift the boom from side to side of the bridge almost constantly,—twenty-five times each hour, as the appellee testified,—and that it would be impracticable to raise and lower the boom every time it was moved across the bridge, and that the bridge workmen were expected to watch the movements of the boom and not stand in the path of its movements; that the appellee had long experience on the work and had served in many different capacities in connection with handling and moving of the booms, the line and the clamps; that he knew well the manner in which the work was usually and customarily carried on, and was aware that the boom, and the clamps hanging from it, were to be moved across the bridge almost constantly,—twenty-five times each hour, as he testified,—and that he was warned by his fellow-workmen that he was in a place of danger, in time to have moved out of the way of the moving boom and clamps.   Evidence produced by the appellee tended to show that it was customary to raise the boom, runner line and clamps high enough to go above the height of a man standing on the bridge.  The greater number of witnesses supported the contention of appellant company.

As to the evidence in support of the defense that the injury was occasioned by the want of due care on the

part of the appellee, it is said in the opinion of the Appellate Court: "There is evidence tending to show that appellee, when struck by the clamps, was standing erect on one of the girders of the bridge near where he knew that every two or three minutes the clamps were being swung back and forth, and where they were plainly visible to him had he looked, and directly in their path; also, that he was given ample warning so he could have avoided being struck by stooping down or stepping to one side." This evidence was directly contradicted (but by the lesser number of witnesses) in so far as it tended to show that appellee knew he was in the path of the clamps, and as to whether any warning given was heard by or made known to appellee in time to enable him to avoid injury. The Appellate Court, as appears from the opinion of the court, found the contention of the appellant company had the support of the greater number of the witnesses, and affirmed the judgment because they did not feel warranted in saying the verdict was manifestly and palpably wrong. In such state of case it is essential to maintain the judgment that all competent evidence offered by the appellant company should have been heard by the jury.

The appellee produced as a witness one Wolfington, who was also a member of the bridge gang at the time appellee was injured but who had left the employ of the company before the time of the trial. The substance of the testimony of this witness was, that had the usual and customary mode of doing the work been observed on the occasion when the appellee was injured, the boom, runner line, ring and clamps would have been raised to a sufficient height to pass above the heads of the workmen on the bridge, and that the appellee exercised ordinary care to protect himself from being struck by the clamps.

During the cross-examination the above witness was asked if the signature to a written statement on a paper which was handed to him was his signature. He exam-

ined the paper and asked that a portion of it should be read to him, which was done, and he testified he had signed the same. Subsequently a second paper purporting to bear his signature was handed to him and he was asked if he had signed it. He was informed that he could examine the entire writing, and he admitted that he had signed the same. Counsel for the appellant company, when producing testimony in its behalf, desired to offer the papers which had been so identified in evidence, as containing statements relative to the facts connected with the injury of the appellee directly at variance with the statements of the witness on the stand, and thereupon the following colloquy occurred:

Mr. Howett (counsel for appellant): "I want to introduce these statements that I have had identified.

The court: "I don't understand that the statement of a witness is competent. The statement of a party or a letter, but the statement of a witness—you may ask him whether on a certain day if he didn't make that statement, and if he said no, why—

Mr. Howett: "I will submit them. See if you have any objection to these statements.

Mr. Rosenthal (counsel for appellee): "Let me read them and see.

(Mr. Howett hands the papers to Mr. Rosenthal.)

The court: "If you object to the statements they do not go in.

Mr. Moses (counsel for appellee): "Certainly we object to the statements as a whole.

The court: "That is all you have to do. Save your point on that, Mr. Howett. I don't understand that the statement of a witness is competent.

Mr. Howett: "Suppose that I present to a witness a paper and he identifies it as his signature, and I ask him if that is a true and correct statement of the facts set forth in there, and he says that it is, and he then proceeds—with one little exception to one line—and tells

another entirely different statement of that accident. He has already told you—told the court and the jury.—that this statement contained a true statement of this accident, and tells an entirely different story. Couldn't I introduce his statement over his own signature?

The court: "I never understood so."

The first of these papers contained separate statements made and signed by F. D. Hayes, foreman of the bridge gang, William H. Miller, assistant foreman, and Joseph McAlly, a member of the bridge gang, relative to the facts and circumstances of the occurrence which resulted in the injury received by the appellee, and also the following statement, in writing, signed by the witness Wolfington:

"J. Wolfington, of bridge gang, states that he has heard the statements made by foreman Hayes, assistant foreman Miller, bridgeman McAlly, and that he fully agrees in same and makes same his statement in fact; that he was standing some sixteen feet distant from Wade, saw that boom was about to strike him, and warned him at about the same time Miller did, after which he had ample time to get out of way but did not seem to do so.            J. WOLFINGTON."

The statement signed by Hayes, referred to and adopted by the witness Wolfington as being his statement, among others contained the following statement: "The men were expected to watch movement of boom line and keep out of its way. This was generally understood by all the men on the work, as well as any other work of a similar nature."

The statement of Miller, also made part of the statement of Wolfington, was as follows:

"That at time of accident he was standing on same girder with Wade, about forty feet distant from him, and seeing that the line was liable to strike him warned him of the danger, and had he paid attention to the same he could have gotten out of the way, as he had time to do so. Joe McAlly was some ten or fifteen feet from me and heard me warn the man. J. Wolfington was standing not far away and heard me warn him, and also called at him himself.            W. H. MILLER."

The statement of McAlly was, in substance, the same as that of Miller and the witness Wolfington. All these parties, except the witness Wolfington, signed the statements on the 4th day of January, 1901, some six months after the appellee was injured, and the witness Wolfington signed January 14, 1901.

The second of the papers so offered in evidence and rejected was signed by Hayes, foreman; Miller, assistant foreman; Sutton, Smith, Riorden, McAlly and the witness Wolfington, all members of the bridge gang. In this statement it was said: "(4) To have the man who handles and raises the rope in a position to see what is going on in advance would necessitate an entire change in the arrangement of the engine, swing beam, etc., and such a change would be entirely impracticable; (5) to have raised the rope above a man's head would necessitate an extra man on the boom to do this, and such an arrangement would be entirely impracticable in bridge work; * * * (7) that he [appellee, Wade,] had notice from several parties, including superintendent of bridges O. J. Travis, foreman Hayes, assistant foreman Miller, and others, of his impending danger, and that such notice was given him in ample time to have gotten out of the way had he been attending to his duties."

As we construe the ruling of the trial court, the written statements were excluded partly on the ground they were the statements of a witness and not a party to the proceeding, and partly on the ground it was necessary, as a foundation for their admission, the witness should have been asked if he did not make the statement on a specified day. That the statements of a witness made out of court, orally or in writing, if contradictory on a material point to his sworn statements as a witness, may be introduced in evidence, not as substantive proof of the truth of such statements but as tending to discredit the witness, has been so frequently declared by courts

206—34

and law writers and is so universally understood and accepted that the citation of authorities in support of the proposition is considered entirely unnecessary.

The court was also in error in confounding the rule as to the foundation to be laid to authorize the admission of oral impeaching statements of a witness with the foundation necessary to justify the offer to introduce contradictory statements made in writing and signed by the witness. When it is desired to impeach a witness by proof of oral statements made by him out of court contradictory upon a material point of his testimony given from the witness stand, it is requisite that a foundation for the introduction of such oral statements be made by asking the witness if he did not, at a given time and place, in the presence of specified persons, make the supposed contradictory statements; but where the supposed contradictory statements were reduced to writing by the witness, or signed by him, a sufficient foundation for the introduction of the writing is laid by showing the paper to the witness, allowing him to inspect it and to read it if he desires, and proving by him, or others, that the signature thereto is his genuine signature. (10 Ency. of Pl. & Pr. 283, 284; 2 Phillips on Evidence, sec. 963; *Romertze* v. *East River Nat. Bank*, 49 N. Y. 577; 1 Greenleaf on Evidence, sec. 596; 29 Am. & Eng. Ency. of Law,—1st ed.— p. 786, and cases cited in note 2; *Momence Stone Co.* v. *Groves*, 197 Ill. 88.) Having laid the foundation for the introduction of the writings as impeaching testimony, the proper practice (as was the course pursued by counsel for the appellant company in the present case) was to offer the writings in evidence with the other testimony in the same behalf. (*Peyton* v. *Village of Morgan Park*, 172 Ill. 102.) The case of *Aneals* v. *People*, 134 Ill. 401, announces no contrary rule. In that case the plaintiff in error complained that the trial court had refused to allow him to prove oral statements made out of court by Hunter and Knox and other witnesses who had testified

for the People.   The exclusion of the testimony was approved for the reason that the attention of the witnesses had not been called to the time, place, etc., of the alleged oral statements and an opportunity for explanation afforded.   It is true it was there said, "this we understand to be the uniform practice and to which we are aware of no exception," but this ruling and the expression quoted had reference only to the rule which applies when the supposed contradictory statements were made orally. The trial court was under a misapprehension as to the rule applicable to the introduction of written statements for purposes of impeachment, and under the influence of that erroneous view excluded the statements.

It is urged, however, that other grounds than those which moved the court existed justifying the rejection of this testimony, and that it is immaterial that the reasons which actuated the court in rejecting it were insufficient if the ruling was for other reasons correct.   It is therefore said the rejection of the written statements should be sustained on three other grounds, viz.: First, that after presenting the first statement to the witness counsel for the appellant company asked the witness questions with regard to the alleged contradictory language therein and read a portion of the statement to the witness in the presence and hearing of the jury, and that thereby the contents of that statement were as fully made known to the jury as if it had been read to them, and that being true, no further proof of the writing was necessary and the exclusion thereof did not prejudicially affect the appellant's case; second, that the two statements were offered together, and the ruling was as to the admission of both of them together, and the first statement being wholly unnecessary and its exclusion not prejudicial, it was not error reversible in character to refuse the offer to admit both statements in evidence; third, that the statements, in some portions, are mere expressions of opinions or conclusions, and not admissi-

ble, and the statements being offered as a whole, should have been rejected for that reason.

Without being understood as deciding that any or either of such reasons would or would not justify the rejection of the statements, the insistence may be disposed of thus: When the first of the statements was presented to the witness he requested counsel for the appellant company to read certain portions of it to him, and parts of it were read to him, but what part or parts the record does not disclose, nor does it appear whether the reading was in the hearing of the jury. The argument of counsel for the appellee proceeds on the assumption the jury heard such parts as were read and heard what counsel and the witness said. Counsel for the appellant company say: "No portion of the statement was at any time read within the hearing of the jury, nor did the jury at any time ever become informed of any portion of the contents of either of the statements. * * * Privately a small portion of it was read to the witness for his own understanding and information while in the presence, but not within the hearing, of the jury." The occurrence, as preserved by the reporter, is as follows:

"Paper handed to witness.

"Mr. Howett: He wishes me to read it to him. If you will, step over here a moment and see that I read it correctly to him.

"Mr. Howett read part of the statement to witness."

The reporter either did not hear or did not enter in his notes the portions that were read. The record is obscure, and we are unable to say whether the jury heard what was read or not. The witness admitted his signature to the first statement, but said "there was a little mistake in it; that he spoke of that at the time," (to the persons present when he signed it); "that the mistake was in what was said about hollowing" to the appellee, etc. If a witness admits that he made statements imputed to him to have been made as fully as claimed to

have been made, further proof of the fact may be unnecessary, but when the witness denies or does not directly admit that he made the statements, the impeaching proof should be permitted to be given. (*Ray* v. *Bell*, 24 Ill. 444; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Feehan*, 149 id. 202.) The first statement was not, therefore, rendered inadmissible on the ground that it was fully brought to the knowledge of the jury. The first statement being admissible, the second supposed reasons for sustaining the rejection of the statements by the court necessarily falls. The third reason is equally untenable. That some of the statements in the writings were but conclusions or opinions was not pointed out as a ground of objection. It is only when the evidence is inadmissible for any purpose and the objections cannot in any manner be obviated that a general objection will suffice. (8 Ency. of Pl. & Pr. 228.) In courts of review only such grounds of objection to the admissibility of evidence will be considered as were urged in the trial court. (*Sullivan* v. *People*, 122 Ill. 385; 8 Ency. of Pl. & Pr. 223.) If some of the statements in the writings, or either of them, were deemed inadmissible for any reason, the objectionable statements should have been pointed out and their exclusion asked.

On a rehearing of the cause any special objection to the admissibility of the statements, or either of them, or any portion of either of them, may be presented to the trial court and then determined.

Objections are urged to three instructions given at the request of the appellee, but they are of minor importance, and relate to inaccuracies which there are no reasons to suppose will again present themselves.

For the reasons indicated the judgment of the Appellate Court and that of the circuit court are each reversed, and the cause will be remanded to the circuit court for such other proceedings as to law and justice shall appertain.                    *Reversed and remanded.*