### Ida Cohen, Appellant, v. Samuel Weinstein, Appellee.
### Gen. No. 28,384.

1. HIGHWAYS AND STREETS—*weight of evidence as to negligent use of street by automobilist.* A verdict for defendant in an action for damages for personal injuries is against the manifest weight of the evidence where that for plaintiff shows that as she stepped from the curb to cross the street, after she looked and saw no approaching automobiles, the street being well lighted and unobstructed, she was struck by defendant's car, running at high speed on the wrong side of the street and that no warning horn or gong was sounded, and defendant's testimony showing freedom from negligence is inherently improbable, inconsistent and opposed to the physical facts and shows that the accident could not have happened as testified to by him.

2. HARMLESS ERROR—*when improper cross-examination of witness not ground for reversal.* In a personal injuries action, it was improper, on cross-examination of a witness for plaintiff, to submit to him an unsigned writing purporting to contain inconsistent statements made by him to a third person after the accident as to the details thereof and ask for a direct answer as to whether or not that is what he said to such third person, who admittedly cannot be produced as a witness, but such examination did not constitute reversible error where counsel subsequently properly exam-

ined him specifically as to each statement and the witness did not admit making any of the statements and either denied making them or did not remember them.

3. EXAMINATION OF WITNESSES—*impeachment of witness by his own inconsistent statements.* It was not error to attempt to impeach a witness on cross-examination by reading to him purported inconsistent statements made to a third person after the transaction in suit and asking him if he made such statements to such third person although it is conceded that the latter cannot be produced as a witness, where misunderstanding by jury could have been obviated by appropriate instructions and argument.

4. EXAMINATION OF WITNESSES—*reading purported contradictory statements to witness on cross-examination.* It was not error to permit counsel on cross-examination to read alleged contradictory statements made by the witness, from a writing purporting to have been made at the time by the person to whom they are claimed to have been made, in framing questions in an attempt to impeach the witness, where the questions were numerous and it was necessary to frame them in substantially the language in which they are claimed to have been made, and any misunderstanding by the jury as to such procedure could have been obviated by appropriate instructions and argument.

5. EXAMINATION OF WITNESSES—*continued cross-examination of witness as to matter denied.* It was not error to permit counsel to continue to cross-examine a witness as to alleged contradictory statements made by the witness before trial, after denial by the witness that he had made the statements as claimed.

6. TRIAL—*refusal to submit alleged contradictory writing of witness to counsel.* It was error, on cross-examination of a witness as to a written statement claimed to contain contradictory statements made by him before trial, not to submit the writing to his counsel as well as to the witness.

7. INSTRUCTIONS—*frequent repetition of words "not guilty" in instructions.* It was improper to close a majority of the instructions in a negligence case with the words "then you should find the defendant not guilty" or words of equivalent meaning.

8. NEGLIGENCE—*sufficiency of instruction as to liability for collision resulting from "mere accident."* An instruction in a negligence case that if the jury believe from the evidence that the collision was the result of a "mere accident" they should find for the defendant should have been modified by inserting the words "without negligence of the defendant" after the word "accident."

9. HIGHWAYS AND STREETS—*sufficiency of instruction as to requisite care in operation of automobile as to pedestrian.* An instruction in a personal injuries action arising out of the collision of

defendant's car with plaintiff while she was crossing a street, relieving defendant from liability if the jury find "that everything was done that could be done by the defendant to avoid" the collision, is objectionable for the inclusion of the quoted words, since the test is not what defendant could have done in the premises but what an ordinarily reasonable person would have done.

. 10. HIGHWAYS AND STREETS—*when instruction that mere happening of accident raises no presumption of negligence error.* It was error to instruct the jury in a personal injuries action, arising out of the collision of an automobile, driven by defendant, with plaintiff as she started to cross the street, that the mere happening of the accident did not in and of itself raise any presumption of negligence, where the evidence shows that defendant's car was on the wrong side of the street and tends to show negligence on his part, the question being one of fact for the jury under the circumstances.

11. HIGHWAYS AND STREETS—*submitting question whether defendant careful and prudent driver where not in issue.* In a personal injuries case arising out of the collision of an automobile, driven by defendant, with plaintiff as she was crossing the street, it was error to submit to the jury the question whether defendant exercised the ordinary judgment and skill of a reasonably careful and prudent driver at and just before the time of the accident, where that was not an issue in the case.

12. HIGHWAYS AND STREETS—*peremptory instruction on use of highway must include all elements of negligence.* Peremptory instructions in a personal injuries case arising out of a collision of an automobile with a pedestrian crossing the street are erroneous where they omit or inaccurately state certain elements of negligence by the driver of the automobile.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Reversed and remanded. Opinion filed December 10, 1923.

PEDEN, GRAYDON, KAHN & MURPHY, for appellant; GERALD RYAN and A. H. RANES, of counsel.

BURT A. CROWE, for appellee; ROY A. NUTT, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by Ida Cohen from a judgment on a verdict rendered against her in an action brought by her for damages for injuries received by her from being struck by appellee's automobile.

One of the grounds on which a reversal is sought is that the verdict is manifestly against the weight of the evidence. Just before the accident appellant, with two of her children, was riding to her home near 79th street in the City of Chicago, in an automobile with two friends, Harry Leach and Alfred Server. They proceeded north on South Shore Drive, which is a north and south street, and stopped on the east side of South Shore Drive between 79th and 78th streets, both of which latter streets are east and west streets. Leach and Server remained in the automobile and were in it at the time of the accident. Appellant got out of the automobile, took one of the children, went across South Shore Drive to the west side of the street and thence to her home. She then started to cross the street to return to the automobile to get her other child. Appellee's automobile, which was going north in South Shore Drive, struck her, breaking her leg and otherwise injuring her. She now walks with a limp, complains of pains and says that she cannot use one of her arms, and also states that she is unable to do some of her household work. The accident occurred about ten o'clock at night.

It is not disputed that the street was well lighted. Appellee testified that there was "plenty of light there." There were no other vehicles or persons in the street except those in question. There was nothing in the street to obstruct the view. The locality is a residential portion of the city.

Appellant testified that when she was struck she had one foot on the west curb and one foot in the street; that she heard no horn before she was hit. This is all that she knows about the accident as she was rendered unconscious.

Harry Leach testified in behalf of appellant that appellee's automobile was about 50 feet away when he first saw it; that it was going north on South Shore Drive on the west side of the street; that as appellee "came closer he went more to the west side"; that "by the time he got up he was pretty well over the west curb"; that appellee did not sound a gong or blow a horn; that he was going at the rate of 25 or 30 miles an hour. Leach further testified that at the time appellant was struck she was on the west side of the street, and "practically down a little from the curbstone, a couple of feet away." On cross-examination there was some confusion in Leach's testimony as to whether he meant to testify that appellant was 8, 10 or 15 feet from the curb when she was struck. When he was asked the direct question, however, whether she was 15 feet from the curb, he stated that she was not; that she was a "little bit down from the curb." Leach further testified that when appellee's automobile struck appellant it dragged her over the curb until it struck a lamp-post about 10 or 12 feet away; that there is a grass plot between the sidewalk and the curb and that the lamp-post is "at the grass plot"; that the automobile "knocked the post right off"; that it took about twelve or fifteen men to lift the machine.

The testimony of Alfred Server in behalf of appellant is substantially the same as Leach's. Server testified that appellant was on the west side of the street when she was struck; that "she was about near the curb; she was down to the curb; about 6 inches or a foot from the curb"; that when he first saw appellee's automobile it was about 3 feet away from appellant; that it was "going kind of north"—in a northwesterly direction; that after it hit her it ran as far as the lamp-post; that it "broke the lamp-post in two"; that appellant was underneath the car; that they "had to get a crowd and jack up the machine to get her

out''; that he heard no gong or horn; that appellee was going about 25 or 30 miles an hour.

Appellee testified that his wife and baby were with him in his automobile; that he was going north on South Shore Drive; that at the place of the accident South Shore Drive is 32 feet wide; that when he reached 79th street he ''slowed up to about 8 miles for the tracks''; that he saw a machine up the street on the right-hand side, right opposite the house where the accident happened; that the house is about 450 feet north of 79th street; that when he had gone about 150 feet he saw appellant starting to cross the street, going from the west to the east; that he then blew his horn; that she was about 250 or 300 feet away from him at that time; that she kept on going; that he was on the right-hand side of the street and continued on; that about the time he got to her, she was past his machine—that is, when he was about 5 or 6 feet from her; that he blew his horn and ''she jumped back to the west''; that he was going so slow he saw the bumper hit her; that he ''jerked the wheel of his automobile to the west so that'' he ''wouldn't run over her body''; that then one of his wheels ran against the west curb and hit the ''lamp-post and it went over''; that the lamp-post is about 8 feet from the curb. On cross-examination he testified that after he crossed the tracks at 79th street he increased his speed from 8 miles to 12 miles in the 350 feet distance; that it was not the full speed of his car; that he might have picked up 16 or 17 miles; that when he saw appellant he was 350 feet away and was running about 18 miles an hour; that that was the first time he saw her; that she was by the curb in the street; that she stepped off the curb and started to walk across the street; that she was going as fast as she could—an ordinary walk; that when he hit her she had got past his machine; that she had possibly walked about 20 feet from the curb; that he blew his horn first when he was about

250 feet from her; that he blew it again when he was about 5 or 6 feet from her; that he blew it because he "didn't know but what somebody might step out from the other machine"; that he was not traveling on the west side of the street and that he did not go up within a foot of the west curb; that when he blew his horn the last time he was possibly 10 feet from the east curb; that when he got up close to appellant he slowed down to about 10 or 12 miles an hour; that the lamp-post was an iron one and that it broke; that just one of his wheels was on the west curb; that the machine had to be lifted off of appellant.

After a careful consideration of the evidence we are of the opinion that the verdict is manifestly against the weight of the evidence. In reaching this conclusion we have been influenced largely by appellee's own testimony. His testimony is inherently improbable, inconsistent, and opposed to the physical facts. He testified that when he first saw appellant she was starting to cross the street from the west to the east side; that at that time he was about 250 or 300 feet away from her; and that he then blew his horn. It is evident, therefore, that he was fully aware of appellant's presence and of her intention to cross the street when he was at a considerable distance from her. He also testified that there was nothing to obscure or obstruct his view as he was approaching her. The question naturally arises, how was it possible for him to strike her in the circumstances? It seems most improbable that he could have done so. Without any further evidence it would appear that it could only have been done through carelessness on his part. His explanation, however, is this: That "about the time he got to her" appellant "was past" his machine and "jumped back to the west" in front of it. But it does not seem probable that she would have "jumped back to the west" when she was going to the east. To explain this he testified that he blew his horn again.

The inference is that this startled her and caused her to "jump back." But why did he blow his horn if she had got past his machine? He certainly would not blow it to warn her, as she was in no danger. There is no apparent reason for blowing it. He answers this objection by testifying that he "didn't know but what somebody might step out from the other machine." This explanation is not satisfactory. Appellant was going back to the "other machine," which stood on the east side of the street to get her child. According to appellee's testimony appellant was about 5 or 6 feet from him; that he was "possibly 10 feet from the east curb"; that the "other machine" was standing on the east side of the street "right opposite the house where the accident happened." The other machine, therefore, must have been several feet away. He does not state any facts that would indicate that any person was attempting to get out of the other machine, or that if there was, how such person could get in front of his machine or be endangered by his machine. Again, why did he wait until he was so near the other machine to blow his horn? If he was blowing it to warn occupants of the machine, why did he not blow it sooner? He further testified that he had his car under control so that he could stop it if any one stepped in front of it from the other machine. If this is the fact, why did he not stop his machine when appellant "jumped back" in front of it? Apparently there was no reasonable necessity for blowing the horn for the purpose stated by him. Furthermore, why did appellant "jump back" to the west when she heard a noise to the rear and west of her? Would not the natural impulse have been for her to jump forward to the east, the direction in which she was going?

Let us consider another phase of appellee's testimony. He testified that when he first saw appellant she was on the *west* curb starting to cross over the

street to the east side; that he was then about 250 or 300 feet from her; that when she passed in front of his automobile "possibly she had walked about 20 feet." If this testimony is true, then after he struck her his automobile, with appellant under it, should have been about 20 feet from the west curb. But that is not the fact. He says he struck her as she "jumped back," and the probability is that after his automobile came to a stop it would have been, if not 20 feet, at least approximately that number of feet from the *west* curb. The fact, as admitted by him, is that his automobile was partly *on* the *west* curb. He testified that one wheel was on the *west* curb. He also testified that appellant was underneath his automobile and the automobile had to be lifted off of her. There is still another inconsistency in connection with this feature of the accident. Appellee testified that when he struck appellant he "was going so slow" that he "saw the bumper hit her." He also testified that when he "got close up to" appellant he "slowed down to about 10 or 12 miles an hour." How, then, if he was "going so slow," was it possible for appellee's automobile to drag appellant a distance of approximately 20 feet to the *west* curb? Moreover, appellee admits that his automobile was about 8 feet from the *west* curb and broke the post. This is hardly consistent with his testimony that he was going slow—at the rate of about 10 or 12 miles an hour. Another discrepancy that arises is, how could he hit a lamp-post that was about 8 feet from the west curb when he says that only "one wheel" of his automobile was on the west curb? Appellee attempts to explain why his automobile, with appellant underneath it, was found on the west side of the street instead of about 20 feet from the west curb, as it should have been if he struck appellant when she was about 20 feet from the west curb. He testified as follows: "I jerked the wheel to the west so that I wouldn't run over her body." But he

admits that after he struck her she was underneath his automobile. The only inference from this admission is that the front of his automobile struck her directly, not glancingly or swervingly, to the west, as would have been the case if he had jerked his wheel to the west. But why did he jerk his wheel to the *west*, when he says she "jumped back" to the *west?* Why did he not jerk the wheel sharply to the east? Or, why did he not stop? He testified that he had his automobile under control and could have stopped it if anybody had stepped out from the "other machine." We do not think that his explanation why his automobile was at the *west* curb of the street is a probable or satisfactory one.

Appellee's testimony in regard to the rate of speed that he was going when he struck appellant is conflicting. He testified he slowed down to 10 or 12 miles an hour. He also testified that appellant went about 20 feet from the west curb while he was going north towards her about 240 feet. We understand, of course, that these figures are only rough approximations. But it would follow from them that appellee was going approximately about twelve times as fast as appellant. He testified that appellant was walking in "an ordinary walk." Assuming that she was walking at the rate of 2½ miles an hour, it would follow that appellee covered the 240 feet at an average rate of about 30 miles an hour. This rate of speed would harmonize with his other testimony that his automobile, with appellant underneath it, was found at the west curb and that the impact of the automobile broke an iron lamp-post about 8 feet from the west curb. It cannot be reasonably harmonized with appellee's testimony that when he struck appellant he "had slowed down to about 10 or 12 miles an hour."

When all of appellee's testimony is considered in connection with the physical facts and also in connection with the testimony in behalf of appellant, we are

of the opinion that the testimony for appellant was substantially correct. In their brief, presumably for the purpose of charging appellant with contributory negligence, counsel for appellee assert that appellant's "evidence showed that she did not look either north or south." Counsel are in error. Appellant testified on cross-examination that while she was standing on the west curb she looked both to the north and to the south before she started to cross the street. We do not find any evidence in the record that contradicts the testimony of appellant.

As it is with reluctance that we disturb a verdict of a jury, and only do so when the rule plainly compels us, we have made an extended and minute analysis of appellee's own testimony, which is all the evidence there is on his behalf in regard to the accident, to show that by reason of its manifest improbability it is clearly insufficient to sustain a verdict in his favor.

Counsel for appellant maintain that the manner in which counsel for appellee cross-examined the witness Leach, in regard to contrary statements alleged to have been made by the witness to a man named Jackson, was improper and highly prejudicial to appellant. In the part of the cross-examination complained of, counsel for appellee first asked the witness the following question: "Do you recall on the 28th day of August, 1920, a young man named Jackson coming out and asking you how this accident happened and you told him, and he wrote it down on a piece of paper—look at this." Counsel for appellee apparently was attempting to lay the foundation for impeachment. The witness answered that he did. Counsel for appellant objected. The court overruled the objection and permitted the witness to look at the paper. After looking at the paper the witness stated that he did not sign it; did not remember whether "this is the one or another one." Counsel for appellee said to the witness, "Read it and you will find out. Take your

Cohen v. Weinstein, 231 Ill. App. 84.

time and read it." Counsel for appellee then asked the witness the question: "Is that what you told Mr. Jackson?" The witness answered: "I don't know exactly what I told him." Counsel for appellant objected and the court overruled the objection. Counsel for appellee then said to the witness: "Now, you can answer yes or no to what is contained in that paper. You just read it and see if that isn't what you told Mr. Jackson at that time, yes or no?" Counsel for appellant objected, but there was no ruling by the court on the objection. The witness answered: "No, I don't know what he put in there. I didn't sign that. Of course, he might have made out fifty papers—."

Up to this point the manner in which the statement was used by counsel for appellee was incorrect. According to counsel's brief he was attempting to lay a foundation for impeachment. If the impeachment was to be made by Jackson, the method adopted was not the proper one. Furthermore, it could not have been for the purpose of impeachment by Jackson, as counsel knew that he would be unable to procure Jackson as a witness. Counsel so testified on the trial. If it was intended to use the statement itself for impeachment by putting it in evidence, this could not have been done because the statement was unsigned. If the statement had been signed by the witness, and the signature had been admitted by him, the method of cross-examination would have been correct for the purpose of putting it in evidence as a matter of impeachment. *Momence Stone Co. v. Groves,* 197 Ill. 88, 92; *Illinois Cent. R. Co. v. Wade,* 206 Ill. 523, 530. In such case no further proof would have been necessary, either by Jackson or otherwise. *Illinois Cent. R. Co. v. Wade, supra.* Although the method of using the statement was an incorrect one, no reversible error was committed by counsel for appellee. The statement evidently contained statements alleged to have been made to Jackson by the witness Leach, and the

witness should have been cross-examined specifically as to the supposed statements. This counsel did later. Counsel continued the cross-examination of the witness by calling his attention to specific statements alleged to have been made by him to Jackson, and asking him whether he had made such statements. This was the proper method of laying the foundation for the impeachment of the witness by Jackson, if counsel had been able to procure Jackson as a witness. *Hoge v. People,* 117 Ill. 35, 49. The witness did not admit making any of the statements. He denied making some of them and did not remember having made others. The answers of the witness gave appellee the right to put Jackson on the stand to prove that the statements were made to him by Leach. *Chicago City Ry. Co. v. Matthieson,* 212 Ill. 292, 296. But, as we have previously stated, counsel for appellee knew at the time that he asked the questions of the witness that he would not be able to produce Jackson at the trial. In his brief counsel states that he was proceeding on the theory that he had the right to lay a foundation for the impeachment of the witness by Jackson whether he followed it up by producing Jackson or not. But counsel was not in fact laying a foundation for impeachment by Jackson. He was merely attempting to impeach the witness by the witness himself and not by Jackson. It was permissible for him to do that. There is "no objection, either of principle or of policy, to such an attempt to prove the self-contradiction by the witness himself." (2 Wigmore on Evidence, 1st ed., sec. 1023, p. 1189). Counsel for appellant objected on the trial to the cross-examination on the ground that counsel for appellee was "purporting to read" from the statement the questions that he was asking. The court overruled the objection. The ruling of the court is assigned as error. Counsel for appellant argue that "this procedure on the part of counsel" for appellee "can be construed

as nothing else than for the purpose of improperly influencing the jury by uttering in their presence what they ought not to hear.'' We do not think that counsel for appellant have expressed precisely the objection that they have in mind. The jury had the right to hear the questions. They were put in proper form. It is true that counsel for appellee was proceeding on an incorrect theory, but the questions were proper notwithstanding that they were asked for a wrong reason. Although counsel for appellee may not have intended to prove by Jackson that the alleged contrary statements were made by the witness Leach, yet counsel had the right to try to find out what answers Leach himself would make in regard to the statements —whether he would deny them all, admit them all, deny some or admit some. The real objection which we think counsel for appellant desire to urge, and which seems to appear from other parts of their argument, is that the jury may have assumed from the fact that counsel for appellant appeared to be reading the questions from the statement, that the statements had been made by Leach, although they were not proved to have been made by him. Counsel for appellant had several means at their disposal which they could have used to prevent any such misapprehension by the jury. They could have asked that the jury be instructed to the effect that the alleged contrary statements, even if proved to have been made, were not to be considered as independent, substantive evidence of any fact, but were to be considered only as bearing on the credibility of the witness. *Illinois Cent. R. Co. v. Wade, supra; Chicago City Ry. Co. v. Matthieson, supra; Ritter v. People,* 130 Ill. 255, 260, 261. The question was not whether the alleged prior statements of the witness were true or false, but whether they were contrary to his testimony on the trial.

We are not asked to believe his prior statements ''as testimony, and we do not have to choose between

the two (as we do choose in the case of ordinary contradictions by other witnesses). We simply set the two against each other, perceive that both cannot be correct and immediately conclude that he has erred in one or the other,—but without determining which one." 2 Wigmore on Evidence, 1st ed., sec. 1018, p. 1179. The purpose and nature of the statements could have been explained in the argument to the jury. And the fact that they were not proved to have been made could also have been argued. The failure to make the proof might react against appellee.

Counsel for appellant contend that the prejudicial effect of the cross-examination was aggravated by the fact that counsel for appellee "cross-examined from a paper which he held in his hand" and which "purported to be a written statement" of the alleged contrary statements made by the witness Leach to Jackson. In our opinion it was permissible for counsel for appellee to hold the statement in his hand and to read from the statement. The questions were numerous and it was necessary to frame them substantially in the language in which they were alleged to have been made. To do this the statement containing them could properly be used as a guide. In principle the procedure was similar to the customary practice of reading from the transcript of the testimony on a former trial in formulating questions for the purpose of laying a foundation for impeachment by showing that a witness had made contrary statements on the former trial. Any misunderstanding of the procedure by the jury could have been obviated, as we have explained, by appropriate instructions and argument.

Counsel for appellant further object to the cross-examination of the witness Leach on the ground that after the witness had read the written statement and had denied having made the statement, counsel for appellee was permitted to cross-examine the witness at length categorically on the alleged contents of the

statement.   Merely because the witness had denied making the written statement did not preclude counsel for appellee from assuming that the denial was untrue and putting further questions to try to show that fact.   *Briggs v. People,* 219 Ill. 330, 337, 338.

After examining all of the objections of counsel for appellant in regard to the cross-examination of the witness Leach, we are of the opinion that no reversible error was committed by the trial court.   In considering counsel's objections, the general rule must also be borne in mind that the latitude allowed on cross-examination rests very largely in the discretion of the trial court, and where there has not been a clear abuse of the discretion, the judgment will not be disturbed. *People v. Harris,* 263 Ill. 406, 417; *Chicago City Ry. Co. v. Creech,* 207 Ill. 400, 402, 403; *Chicago, R. I. & P. Ry. Co. v. Rathburn,* 190 Ill. 572, 575.

Counsel for appellant further object that counsel for appellee refused to allow them to see the written statement from which he appeared to cross-examine the witness.   Counsel for appellant have cited no authority on this point of practice.   The rule is well settled that the *witness* himself was entitled to see the statement.   ''A witness cannot be asked on cross-examination whether he has written such a thing, stating its particular import, the proper course being to put the writing into his hands and to ask him whether it is his writing.''   1 Greenleaf on Evidence, 13th ed., sec. 465.   In the case at bar, the statement was shown to the witness and he was allowed to read it.   If the witness was entitled to see the statement, it would seem to follow that his counsel would have the right to see it.   Counsel for appellant should have been fully informed as to what was taking place between his witness and opposing counsel.   There should have been no secrecy in the matter.   Fairness would seem to require opposing counsel to submit the statement to the witness' counsel after it had been shown

to the witness. We can see no harm that would result from such procedure. In the somewhat analagous practice of using memoranda and documents for the purpose of refreshing the recollection of a witness, the opposite party is entitled to see them. 1 Wigmore on Evidence, 1st ed., sec. 753, p. 846; sec. 762, p. 854; 5 Jones on Evidence ("Blue Book"), sec. 876, p. 314. Evidently from the fact that counsel for appellee showed the statement to the witness, there was nothing of a personal nature in the statement which counsel desired to keep private. If, in addition to the matters which counsel desired to cross-examine on, the statement contained private memoranda and wholly irrelevant matters which counsel did not care to have seen, the statement could first have been submitted to the trial court and the court could have separated or concealed such memoranda or irrelevant matters.

We are of the opinion that in the case at bar counsel for appellant was entitled to see the statement.

Counsel for appellant contend that the trial court erred in the giving of certain instructions for appellee. It is objected by counsel for appellant that "out of twenty-one instructions given at the request of appellee eleven closed with the words 'then you should find the defendant not guilty' (instructions 21, 22, 23, 24, 26, 33, 35, 36, 37, 38, 39) and two 'your verdict should be for the defendant' (instructions 28, 32)."

In the case of *Nelson v. Chicago City Ry. Co.*, 163 Ill. App. 98, 102, the court disapproved of the practice of repeating in instructions the words "not guilty." The court said (p. 103): "No legitimate reason appears for the repetition of the direction to find the defendant 'not guilty' so frequently." We think the expression of the court in the above case is applicable to the case at bar.

Counsel for appellant maintain that instruction 22 is erroneous. It told the jury that if they believed

from the evidence that the collision was the result of a mere accident, they should find appellee not guilty. The instruction should have been modified by inserting the words "without negligence of the defendant" after the word "accident." *City of Chicago v. Sheehan,* 113 Ill. 658, 661.

Instruction 23, which is objected to, is as follows: "The court instructs the jury that, as a matter of law, if they believe from the evidence that the automobile of defendant on approaching the place in question was being operated in a reasonable, prudent and careful manner and that everything was done that could be done by the defendant to avoid colliding with the plaintiff as soon as the driver saw or, by the exercise of due care, could have seen the danger of the plaintiff, then the jury should find the defendant not guilty."

The phrase "that everything was done that could be done by the defendant to avoid colliding with the plaintiff" is objectionable. The test is not what the defendant may have done but what an ordinarily reasonable person would have done. The instruction concluded with a direction to the jury to find the defendant not guilty. It should, therefore, have been accurately framed and should have contained all of the elements necessary to support the finding of the jury. *Hunter v. Gates,* 227 Ill. App. 105, 109.

Instruction 25, which is objected to, is as follows: "The court instructs the jury that the mere happening of the occurrence in question in and of itself raises no presumption of negligence on the part of the defendant; and you are not bound to believe anything to be a fact simply because a witness or witnesses have stated it to be so provided you believe from all the evidence that such witness is mistaken or has testified falsely to such fact."

It was error to tell the jury that the mere happening of *the* occurrence in question raised no presump-

tion of negligence. We do not think that it can be said in the case at bar, as a matter of law, that no presumption of negligence arose from the mere happening of the occurrence. The question was one of fact for the jury. *West Chicago St. R. Co. v. Petters,* 196 Ill. 298, 300; *Hartrich v. Hawes,* 202 Ill. 334, 342, 343; *Pennsylvania Co. v. McCaffrey,* 173 Ill. 169, 175, 176.

Instruction 26 is objected to and is as follows: "The jury are instructed that if you believe from the evidence that the defendant was a person of ordinary and reasonable skill in the business in which he was engaged and that he exercised the ordinary judgment and skill of a reasonably careful and prudent driver in driving the automobile at and just before the time of the injury complained of, then you should find the defendant not guilty."

Counsel for appellant maintain that the question whether appellee was a "reasonably careful and prudent driver" was not an issue in the case. We think the objection is well taken. *Shaw v. Corrington,* 171 Ill. App. 232, 234.

Error is assigned on the giving of instruction 33. It is as follows: "The court instructs the jury that if you believe from the evidence that the defendant was not negligently operating the automobile, and if you further find from this evidence that the plaintiff suddenly and unexpectedly walked or ran into the street and into the automobile of the defendant, so suddenly that the defendant had no notice of any danger and so that it was impossible for the defendant to avoid striking plaintiff after seeing her, or after he could by exercising reasonable care have seen her, then you are instructed that the defendant was not negligent and your verdict should be not guilty."

The instruction is a peremptory instruction and should contain all of the elements necessary for the jury to consider in arriving at the verdict. *Hunter v. Gates, supra.* The question of negligence on the part

of appellee is excluded from the following clause of the instruction: ''so suddenly that the defendant had no notice of any danger and so that it was impossible for the defendant to avoid striking plaintiff after seeing her.'' The question is whether appellee was negligent or whether he exercised due care in the circumstances. He may not have noticed any danger for the reason that he may not have used due care and diligence. The clause, ''so that it was impossible for the defendant to avoid striking her,'' also excludes the idea of due care. Why may it have been ''impossible?'' Would it have been ''impossible'' even though he had used due care? The clause that immediately follows is not a qualifying clause but is an alternative clause.

Instruction 36 is objected to principally on the ground that it is a peremptory instruction and fails to charge appellee properly with due care. The instruction should have been modified so as to express the idea that the defendant could not, with the exercise of due care on his part, reasonably have foreseen or anticipated what happened.

Instructions 37, 38 and 39, objected to by counsel for appellant, are peremptory instructions, concluding with the direction to the jury to find appellee not guilty. They are not drawn with the precision and accuracy required by the rule in regard to peremptory instructions. They contain defects and inaccuracies similar to the ones which have been indicated in the other peremptory instructions.

In our opinion the verdict is manifestly against the weight of the evidence. Upon another trial the errors in the instructions should not be repeated.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Matchett, P. J., and McSurely, J., concur.