AGNES EMBODY, *as Guardian, Respondent,* v. JOHN COX
*et al., Appellants.*

NOYES H. EMBODY, *Respondent,* v. JOHN COX *et al.,*
*Appellants.*[1]

[1]Reported in 289 Pac. 44.

*Roberts, Skeel & Holman,* for appellants.
*Atwell & Moore,* for respondents.

MITCHELL, C. J.—On February 24, 1928, John Cox, in the performance of his contract with the Castle Rock school district, operated a bus carrying school children living in the country to and from the school at Castle Rock. On that day, one of the school children, Elmer Embody, slightly over fourteen years of age, while being transported from the school, was accidentally thrown off the bus and injured. His mother, as guardian *ad litem,* sued Mr. Cox and his wife on account of the injuries to the boy, while his father brought a separate suit on account of the costs and expenses incurred by reason of the injuries. By agreement of the parties, the two cases were tried together. There was a verdict for the plaintiff in each case, upon which judgment was entered. The defendants have appealed in each case. The two cases have been presented together in this court. One opinion will suffice for the two cases.

The great burden of the argument on behalf of appellants is that both cases should have been taken from the jury and decided by the court in favor of the defendants, as a matter of law, on account of the contributory negligence of the boy. The bus had a box body inside of which were seats for the children. There was a doorway in the front end of the box body at the right hand corner, which was kept open at all times for the lack of a door. Both sides of the front of the bus were open. The driver's seat ran from the left hand side about two-thirds of the way across the bus to the left hand side of the doorway. Some six or eight inches below the doorway, a step, ten or twelve inches wide and approximately eighteen inches long, had been fastened alongside of the bus, the front end of this

step being even with the edge of the driver's seat, and about on a level with the floor of the driver's seat. Below the floor of the driver's seat, the running board, reinforced, constituted a step to and from the ground. This reinforced step was suspended from the frame of the bus by braces, the rear end of this step being flush with the front of the driver's seat and immediately under the front end of the extra step above leading to the doorway. From the rear brace of the lower step, the running board of the bus had been removed. From the doorway of the body of the bus and along the upper step and the lower step, there was nothing whatever in the way of a bar, railing or other protection against one's falling off the bus.

Simultaneously with transporting the school children, Mr. Cox carried the mail both ways three of the five school days each week, the day on which the boy was hurt being one of those mail days. He had been running the school bus all that school year, and the testimony showed that four or five of the oldest children, including Elmer, usually had something of a scramble or contest to get the seats outside the body of the bus around the driver. It appears that they preferred those seats because of the open air and better opportunity of sightseeing. The route traversed consisted of a good, smooth, graveled highway, except that at the place the accident happened there were small holes, spoken of as chuckholes. The boys, including Elmer, were delighted to help about handling the mail; it gave them exercise. By the plan followed, if the bus could be driven close enough, the boys would take packages from the mail boxes or messengers or place them with them, as occasion required, without getting off the bus, else they would get off and return after rendering such service. They enjoyed it, and even engaged in pranks about the bus, generally with-

out any reprimand, unless it be slight, which would go unheeded and forgotten after a few moments.

Just before, and at the time of, the accident, one boy was sitting on the driver's seat with the appellant, another on the floor of the driver's seat with his feet down on the running board step, while Elmer was sitting on the step immediately under the doorway, facing the way the bus was being driven, with his feet on the running board step. Several witnesses so testified, while the appellant testified that Elmer sat in the doorway.

Some half or three-fourths of a mile before reaching the place at which the accident happened, the appellant spoke to Elmer, telling him he had better get back in the bus, that he might fall off. At that time, they were going ten or twelve miles an hour, which speed was continued until the accident happened. At the time he was told to get back into the car, the boy was in an awkward situation for the purpose of obeying the order. One witness said that, for the boy to obey, it would have been necessary for him to stand "on the running board, to reach down behind him and take hold of a timber to brace himself, and that he would have to stand up and turn around." Elmer testified that "it was safer where he was than to try to get back into the bus." On being asked what caused him to fall off of the bus, he said that the bus "hit a bump or something and jarred and threw him off."

██  On the question of the negligence of the appellant, not much need be said. He was being compensated for his services and engaged in transporting children to and from school, and was under obligation to exercise care accordingly, and for him to permit the children continuously to occupy seats crowded around and about him in the open front portion of the bus rather than on the inside of the body, especially

as part of the road was bumpy, was sufficient, in our opinion, to take the case to the jury on the question of negligence.

Nor was there any error in refusing to take the case from the jury on the question of the boy's contributory negligence. It appears that he was of average intelligence for his age. He and other boys had been not only allowed, but somewhat encouraged, for months, particularly on mail days, to occupy the outside seats, believing of course that they were under the care of the appellant while doing so, and although appellant did tell the boy he might fall off, a few minutes before the accident happened, it was not thought of by the appellant with sufficient seriousness to cause him to stop the bus so that the boy could safely get back into the body of the bus.

As early as the case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, this court, citing cases from many courts, said:

"Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury."

That has been the uniform holding in this state.

Of course one as old as this boy was and possessing average intelligence as he did may be guilty of contributory negligence, but that is entirely different from deciding, as a matter of law, that this boy was guilty of contributory negligence in this case. A great many cases are cited by counsel, that need not be reviewed here. Each case has its own peculiar facts and circumstances. However, the principle or thought in this respect mentioned in the case of *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820, is very sug-

gestive and persuasive in the consideration of the present case. In that case it was said:

"The plaintiff in this case was a boy fourteen years old. The relative liability, so far as negligence is concerned, of children and adults, was discussed at large in the case of *Roth v. Union Depot Co.*, 13 Wash. 525, and what was said there might apply with equal force in this case. It is true that in that case the boy injured was only nine years old, and in this case he is fourteen; but a boy fourteen years old is a boy still, and while he might be held to a greater degree of care and prudence, and doubtless would be, than a boy nine years old, yet it would certainly be barbarous, and to a degree inhuman, for the court to hold a heedless, thoughtless fourteen year old boy to as high a degree of circumspection as it would an adult, whose judgment and caution had been cultivated and matured by years of observation and experience. This is a circumstance to be viewed by the jury, and to be given such weight as the jury, under the circumstances, think it is entitled to."

In this case contributory negligence was not established as a matter of law and the trial court correctly so held.

■ Appellants complain because of the striking of certain evidence tending to show unskillful treatment of the boy's injuries. There was no issue of that kind made in the pleadings, there is no complaint now that the verdicts were excessive, and, as we understand the record, counsel for appellant first injected the matter into the case rather casually by cross-examination of respondent's witness, and, upon undertaking thereafter to introduce further evidence along that line, met with an objection that was sustained and the striking of the testimony referred to. The ruling was correct in our opinion and at least without any prejudicial error.

█ Appellant further complains that there was a fatal departure in the proof from the allegation of the complaint in that one allegation was that the boy's pelvis was fractured by the accident, while the proof showed it was only displaced. An examination of the record shows there could not possibly have been any misleading or surprise in this respect. One or more of the physicians, in referring to this particular injury, spoke of it as a break, fracture, displacement, and more particularly, in speaking of certain joints of the pelvis, said: "Frequently where these movable joints are separated, it is referred to by the term fracture, by laymen."

█ What has been already said disposes of some of the assignments of error based on the refusal of the court to give certain requested instructions. The giving of certain instructions and the refusal to give others that were requested are assigned as errors. They have been examined and considered, and, without setting them out and discussing them in detail, we find that such assignments are without substantial merit. In one or two of such instructions, where it is claimed they were not given, we find that instructions were given in substantially identical language. Other requested instructions that were essentially correct, though not given as presented, were substantially and sufficiently given by the court in its own language. Altogether it seems to us that the instructions were full and complete, covering both cases together with a fair account of the contentions of the respective parties in each case.

The judgment in each case is affirmed.

MILLARD, PARKER, TOLMAN, and BEALS, JJ., concur.