Rockingham, }
Jan. 6, 1931. }

Joseph Charbonneau, *Adm'r*
*v.*
Colin MacRury & *a.*

*William H. Sleeper, John W. Perkins* and *Omer H. Amyot* (*Mr. Sleeper* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

SNOW, J.   The plaintiff concedes that the infancy of a person is of material importance in determining whether he has been guilty of contributory negligence, but contènds that a minor charged with actionable negligence is to be held to the standard of care of an adult without regard to his nonage and want of experience.   While the issue thus presented has been mooted in discussion by writers, there is a dearth of judicial authority directly in point.

The two leading cases dealing with the specific question are *Neal* v. *Gillett,* 23 Conn. 437, 442 and *Briese* v. *Maechtle,* 146 Wis. 89, 91. In the former the defendants, thirteen and sixteen years of age, playing ball by the roadside, were charged with negligently passing a ball so close to the head of the plaintiff's horse as to produce fright and cause the injury.   Exception was taken by the defendants to a refusal to charge that the jury were at liberty to take into consideration their age in connection with the other circumstances of the case, and "that the law would not require the same acts of caution, and prudence in a child, as in a man"; and also to the instruction given, namely, that "the age of the defendants was not to bè taken into account by the jury," in determining the question of negligence "as they were only to allow in any event actual damages, this being all the plaintiff claimed."   It was there contended by the plaintiff's counsel (1) that a child incapable of exercising intelligent volition was liable for actual damages committed by him, (2) that cases in which extreme youth had been held to excuse a child from exercising ordinary care were exclusively cases where the child had been plaintiff and (3) that children of the age of the defendants were bound to exercise the same care as adults.   The opinion reads, "a majority of the court are of opinion that the charge was right; though we do not intend to decide whether the distinction taken by the plaintiff's counsel in regard to the protection which infancy, or 'non-age', affords, when claimed by a plaintiff, and when set up by a defendant, is well taken or not, and only remark, that we have been referred to no authority, which directly sanctions such distinction.   We place our determination upon a different ground."   An *obiter dictum* to like effect is to be found in *Roberts* v. *Ring,* 143 Minn. 151, 153 where, after stating the rule that, in considering the contributory negligence

of a seven year old boy plaintiff, the standard is the degree of care commonly exercised by the ordinary boy of his age and maturity, the court remarked, "It would be different if he had caused injury to another. In such a case he could not take advantage of his age or infirmities."

*Briese* v. *Maechtle, supra,* was an action in behalf of a boy of nine years of age charging a defendant of ten years with negligent injury inflicted in a collision while playing games with their schoolmates— the plaintiff at marbles and the defendant at tag. The court there said "Infants may be guilty of actionable negligence, and even though the defendant was engaged in a perfectly lawful occupation he may have conducted himself so negligently as to make himself liable for damages resulting from such negligence. Here, however, comes in the marked difference between the tests of negligence as applied to the act of an adult and the same act when committed by a child. The rule is that a child is only required to exercise that degree of care which the great mass of children of the same age ordinarily exercise under the same circumstances, taking into account the experience, capacity, and understanding of the child . . . This was the measure of the defendant's duty—no greater and no less." The court, reviewing the facts, considered that no one could say that the defendant was doing anything more or less than healthy boys of his age have done from time immemorial, holding in effect that, inasmuch as the defendant's conduct complied with the prescribed standard, there could be no recovery. The case appears to be directly in point for the defendant here.

*Dicta* supporting the latter view are to be found in several cases. In *Bradley* v. *Andrews,* 51 Vt. 530, 533 (1879), a request for a charge that the jury could not hold the defendant, a lad of thirteen, to the same degree of care that they would a man of full age and strength of mind was said to point to a well-settled legal principle, and that a disregard of the request would have been error had the case required its application. In *Gulf &c. Ry. Co.* v. *McWhirter,* 77 Texas 356, it is said, "The general rule is that infants are liable for torts committed by them when intent with which the act is done is not an element on which liability depends; but in determining whether contributory negligence exists the intelligence of the child must be considered, for a child's care must be measured by its intelligence, whether it be the actor or sufferer." In *Bullock* v. *Babcock,* 3 Wend. 391, 393 (1829), the court held "where infants are the actors, that might probably be considered an unavoidable accident which would not be so consid-

ered where the actors are adults." In *Harvey* v. *Dunlop*, Hill & Denio, (Supp.), 193, 195, it is said that "In order to arrive at a decision upon this question the jury had a right to take into consideration" *inter alia* "the childhood of the parties."

A like conflict of views appears among legal scholars and textbook writers. Henry T. Terry, in his article on negligence, 29 Harv. L. Rev. at *p*. 47, says, "The test of reasonableness is what would be the conduct or judgment of what may be called a standard man in the situation of the person whose conduct is in question . . . Every man, whether he is a standard man or not, is required to act as a standard man would. If by chance he is not such a man, he may . . . make a mistake and act so as to be guilty of legal negligence, though he has used all such care and forethought as he was capable of. In the case of contributory negligence there is an exception to this rule in the case of abnormal persons, such as children and persons of unsound mind. They are not required to act like a standard man, but only to use such judgment as they are capable of. But as to negligence which is not merely contributory, as to negligent wrongs against others, the standard man test applies to their conduct also."

On the other hand, Professor Bohlen, in his Studies in the Law of Torts, *p*. 543 (1926) (59 Am. L. Rev. 864), says (*p*. 568) "there is a dearth of authority as to the liability of infants or insane persons for harm done to others by acts which would have been negligent in adult or normal persons, but there is a plethora of authority in a field closely allied thereto. . . . the reports are full of cases in which infants have been held incapable of contributory negligence . . . (*p*. 570). If our law recognizes infants and insane persons as incapable of exercising that care for their own protection which is required of normal persons as a condition to their right to redress for injuries caused by the wrongful acts of others and relieves them from the penalty which such lack of care would, but for their incapacity, impose, it would be inconsistent and arbitrary to penalize them by requiring them to compensate others whom they injure by conduct, which, though guilty in others, is, by reason of their incapacity, innocent in them . . . It would, therefore, seem . . . that where a liability, like that for the impairment of the physical condition of another's body or property, is imposed upon persons capable of fault only if they have been guilty of fault, immaturity of age or mental deficiency, which destroys the capacity for fault, should preclude the possibility of liability, . . . [*p*. 571] so long as it is accepted as a general principle that liability for injuries to certain interests are to

be imposed only upon those guilty of fault in causing them, it should be applied consistently and no liability should be imposed upon those for any reason incapable of fault." In a note, at *p.* 576, it is further said "While . . . there are but few cases in which the liability of infants to third parties injured by their intentional or negligent acts has arisen, there is an immense mass of authority holding that infants are not to be penalized for conduct which in adults would be contributory negligence. It cannot be said that the tests which have been judicially adopted to determine an infant's capacity for contributory fault are altogether satisfactory and uniform and the many Anglo-American common law jurisdictions have worked out for themselves tests which in practice have been reasonably satisfactory and which are [as] applicable to determine the capacity of an infant for fault in conduct which has injured another as they are for determining his capacity for fault, which will bar him from recovering for an injury caused by another."

After discussing the relevancy of evidence of youth in disproof of malice or special intent, Salmond, in his Law of Torts (7th *ed.* 1928) *p.* 83, says "it would seem that in order to make a child liable for negligence, it must be proved that he failed to show the amount of care reasonably to be expected from a child of that age. It is not enough that an adult would have been guilty of negligence had he acted in the same way in the same circumstances. This, indeed, seems never to have been decided, but it would seem implied in the decisions on the contributory negligence of children," citing *inter alia, Lynch* v. *Nurdin,* 1 Q. B. 29 (1841) where the contributory negligence of a child of seven years was the issue, and in which it is said "ordinary care must mean that degree of care which may reasonably be expected from a person in the plaintiff's situation."

In 2 Cooley on Torts (3d *ed.*) 1470, the author says, "But the general rule is that a child is required to exercise the degree of care which children of the same age ordinarily exercise under the same circumstances, taking into account the age, experience, capacity and understanding of the child."

In 1 Thompson, Neg. *s.* 36, it is said, "The better and the only consistent doctrine is, that whether a person is plaintiff or defendant in an action, negligence can not be imputed to him if he has not sufficient mental capacity or discretion to understand danger and use the proper means of guarding against it. As we shall see hereafter, when considering the subject of the contributory negligence of children, the rule is that children are required by the law to exercise only such a

degree of care as might, under the particular circumstances, be reasonably expected from a child of the same age, sex, intelligence and judgment as the one receiving the injury."

The American Law Institute (Am. L. Inst. Restatement Torts, Tent. s. 167) in commenting upon the adopted standard of conduct which it defines as "that of a reasonable man under like circumstances" says (e) "A child of tender years is not required to conform to the standard of behaviour which it is reasonable to expect of an adult, but his conduct is to be judged by the standard of behaviour to be expected from a child of like age, intelligence and experience. A child may be so young as to be manifestly incapable of exercising any of those qualities of attention, intelligence and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a child who has not yet attained his majority may be as capable as an adult of exercising the qualities necessary to the perception of a risk and the realization of its unreasonable character. Between these two extremes there are children whose capacities are infinitely various. The standard of conduct required of such a child is that which it is reasonable to expect of children of like age, intelligence and experience. In so far as concerns the child's capacity to realize existence of a risk, the individual qualities of the child are taken into account. If the child is of sufficient age, intelligence and experience to realize the harmful potentialities of a given situation, he is required to exercise such prudence in caring for himself and such consideration for the safety of others as is common to children of like age, intelligence and experience." By way of "Special Note" it is further said "There are so few cases which involve the liability of a child defendant that it has been necessary to state the standard of behaviour required of a child as it is indicated by the analogy of contributory negligence on the part of young children. There may be some doubt as to whether it is correct to regard contributory negligence and negligence as sufficiently analogous to make one a safe basis for statements in regard to the other. It may be that children should not be required to conform to a particular standard in order to relieve an ad-. mittedly negligent defendant from liability to them. It does not necessarily follow that a child should not be required to conform to a higher standard of behaviour where it is necessary for the protection of innocent members of the public. On the whole, however, the contributory negligence cases do not seem to show an undue regard for the inevitable inferiorities of children and therefore it is probably

safe to accept the standard to which a child must conform to avoid liability for harm caused to innocent outsiders as substantially the same as that to which he must conform to be free from contributory negligence."

Such are the opposing authorities and divergent views where the question has been directly considered, so far as they have come to our attention. However, as indicated in the foregoing excerpts, a "plethora of authority" is to be found in the analogous field of contributory negligence. The reasons there expressed, or impliedly assigned, for limiting the measure of care required of infants in their own protection would, for the most part, support a like limitation in the case of their actionable fault. It is, however, unnecessary to look to other jurisdictions for such analogous authority.

While the specific question of the application of the rule of reasonable conduct to minors charged with primary negligence has not before arisen in this jurisdiction, in the cases where a child's contributory fault has been in issue the conclusion of the court that his infancy is a factor to be considered has been expressed in terms which would apply to his primary as well as to his contributory fault. "An infant [aged 8] is bound to use the reason he possesses and exercise the degree of care and caution of which he is capable." *Buch* v. *Company*, 69 N. H. 257, 259. "The fact that the plaintiff was only eleven years of age does not relieve him . . . from the obligation to use such care and prudence as persons of his age and intelligence would naturally be expected to use under the same circumstances." *Bresnehan* v. *Gove*, 71 N. H. 236, 239. "The plaintiff's intestate, [aged 17] if of less than average intelligence, was bound to use the reason he did possess; and if by the due exercise of his physical and mental powers he could have avoided the injury, this action cannot be maintained." *Boyce* v. *Johnson*, 72 N. H. 41, 43. "The test . . . to determine whether the plaintiff [aged 14] was acting within his legal rights . . . was to inquire whether the ordinary boy of his age and experience, and with his knowledge of the situation, and its dangers, would have done what he did; in other words, to inquire whether he was free from fault." *Kambour* v. *Railroad*, 77 N. H. 33, 51. "Neither can it be said that he [the plaintiff aged 16] was guilty of contributory negligence, for negligence as used in this connection is the doing or omitting to do that which the ordinary boy of his age and experience, and with his opportunity to know, and capacity to understand the situation and its dangers, would not have done or omitted." *Dostie* v. *Cotton Mills*, 80 N. H. 87, 88. "The test to de-

cide that issue [plaintiff's right to recovery] is to inquire whether in a similar situation the ordinary girl of the plaintiff's age and experience and with her knowledge of the situation and its dangers might have jumped when and as she did." *Silver* v. *Jones*, 81 N. H. 297, 298.

There is nothing in the language of these cases which suggests any distinction between the care required of an infant in his own protection and that exacted of him in his conduct toward others. On the contrary it tends to refute such a distinction. If the law requires a minor for his own protection to "exercise the degree of care and caution of which he is capable" (*Buch* v. *Company, supra*), or which he "would naturally be expected to use" (*Bresnehan* v. *Gove, supra*), to use "the reason he did possess" (*Boyce* v. *Johnson, supra*), to conduct himself "free from fault" (*Kambour* v. *Railroad, supra*), to do what one of his age, experience, opportunity and capacity would have done (*Dostie* v. *Cotton Mills, supra; Silver* v. *Jones, supra*),—it is plain that to exact of him a higher standard of care for the protection of others would be to require him to exceed his capabilities, to transcend the natural expectation, to possess a reason which he did not have and to do what one of his age, experience, opportunity and capacity would not have done. The law makes no such unreasonable demand. Such a holding would be in the teeth of the expressed attitude of this court in dealing with the infirmities of youth. *McCaffrey* v. *Company*, 80 N. H. 45, 53; *Lane* v. *Manchester Mills*, 75 N. H. 102, 105. "A child should no more be held to have had capacity to apprehend a duty which he had not than to have had stature or strength which he did not possess." 25 Ill. Law Rev. 214 *note.*

Unless infants are to be denied the environment and association of their elders until they have acquired maturity, there must be a living relationship between them on terms which permit the child to act as a child in his stage of development. As well expect a boy to learn to swim without experience in the water as to expect him to learn to function as an adult without contact with his superiors. For the law to hold children to the exercise of the care of adults "would be to shut its eyes, ostrich-like to the facts of life and to burden unduly the child's growth to majority." 37 Yale L. J. 618. During the period of his development he must participate in human activities on some basis of reason. Reason requires that indulgence be shown him commensurate with his want of development as indicated by his age and experience. *Id.* 621. Though strictly speaking it is the resultant qualities reasonably attributable to these factors that measure his capacity (1 Shearman & Redfield, Neg. (6th *ed.*) 72a) it is sufficient, as

a practical matter, to speak of age and experience as inclusive of these qualities.

It is error, however, to assume that the law requires reasonable care of adults and not of minors, or applies different measures to the primary and contributory faults of the latter. The law of negligence has for its foundation the rule of reasonable conduct. The general rule is more fully stated as reasonable care under all the circumstances of the particular case. *Garland* v. *Railroad*, 76 N. H. 556, 563. This is the true test or measure in all cases. In applying this rule to the conduct of adults recourse is had to a mythical person called the "standard man" with whose conduct that of the actor is to be compared, namely, the average prudent person placed in his position. *Byron* v. *Railroad*, 82 N. H. 434, 438, and cases cited. While this standard is external (*Garland* v. *Railroad, supra,* 564; *Sevigny* v. *Company*, 81 N. H. 311, 312), it must necessarily be applied to the actor in the particular situation disclosed by the evidence. It is for the jury to say whether such standard person put in his place, possessed of the same knowledge and means of knowledge that he had of the surrounding circumstances would or might have done as he did. The knowledge which the actor had, or which he would have had if he had used his faculties, are facts in the light of which he is bound to act as the average prudent person would have acted in his situation. *Sevigny* v. *Company, supra.* The jury bring to bear their experience in the affairs of life and their knowledge of the motives that govern human action and of the conduct of reasonable prudent men. *Folsom* v. *Railroad*, 68 N. H. 454; *Carney* v. *Railway*, 72 N. H. 364, 372. In other words, possessed of a yardstick with which the law presumes them to be familiar, wholly external to the subject to be surveyed, the jury apply it to the conduct of the party in evidence and determine whether it measures up to the standard. *Smith* v. *Railroad*, 70 N. H. 53, 85. Such is the rule of reasonable conduct and the method of its application to the normal person whether he is charged with primary fault (*Warren* v. *Railway*, 70 N. H. 352, 363) or with contributory negligence. *Folsom* v. *Railroad*, 68 N. H. 454, 460. How and why does the rule, or its application, differ if the actor is a minor? And is there anything in the basis for such difference that calls for any distinction between the minor's primary and his contributory fault?

We are told that "the personification of a standard person helps us realize that the actor's conduct is to be compared with that of a human being with all of the human failings." 41 Harv. L. Rev. 9.

But such standard person is the average prudent adult. In striking this average the law takes into account the failings only of those who have come to maturity. A minor, in the absence of evidence to the contrary, is universally considered to be lacking in judgment. His normal condition is one of recognized incompetency. *Moore* v. *Hoyt*, 80 N. H. 168, 170. He is a "human being" subject not only to the ordinary "human failings" but also to those normally incident to immaturity. It is a matter of common knowledge that the normal minor not only lacks the adult's knowledge of the probable consequences of his acts or omissions but is wanting in capacity to make effective use of such knowledge as he has. His age is a factor in so far as it is a mark of capacity. 37 Yale L. J. 618. But other qualities which are ordinarily the product of experience, using the term in its broader sense as inclusive of education and of the understanding that comes from practice and opportunity for observation, are important considerations in determining his ability both to appreciate the dangerous character of his conduct and to avoid its consequences. A danger may be concealed by the obscurity of intelligence due to immaturity as well as by its own inherent obscurity. *Dziedzie* v. *Company*, 81 N. H. 516, 517.

It is for these reasons that the law recognizes that indulgence must be shown the minor in appraising the character of his conduct. This is accomplished however through no arbitrary exception to the general rule of reasonable care under all the circumstances. As we have said this is always the test. But what is reasonable when the actor is a minor? Manifestly the adult test of the standard man cannot be applied in disregard of the actor's youth and inexperience. Either a new standard denoting the average person of the minor's age and development must be taken as the yardstick, or else allowance must be made for the minor's stage of development as one of the circumstances incident to the application of the general rule of reasonable care. As a practical matter it is not important which course is pursued. This court, however, is inclined to approve the latter both as being in harmony with the universal rule that reasonable conduct under all the circumstances is the true test of due care, and in the interest of simplicity in applying the law to the facts. The latter course merely requires the jury to apply the accepted rule of reasonable conduct under the circumstances, of which the stage of development of the minor is one, while the former imposes upon the jury the duty first to set up a standard youth for each particular case from the composite factors of age and experience as disclosed in the evidence,

and then to apply that standard to the remaining circumstances in proof. For expressions of doubt as to the existence of a special standard of care in the case of minors see 37 Yale L. J. 618-625.

It is a matter of common knowledge that physical and mental maturity is attained by a gradual but generally progressive process of growth from birth, and that the stage at which it is reached varies with the individual. As the factors making for this variation are not alone congenital but result from teaching and experience, it follows that the age at which maturity is in fact reached cannot be determined with mathematical accuracy. The necessities of society, however, require that some age should be considered as *prima facie* evidence of maturity. The age of twenty-one, which has been accepted by common consent as the basis for the enfranchisement of infants, as fixing their capacity to make contracts and for other purposes, is allowed to mark the supposed border line between immaturity and maturity. This limit is, however, but an approximation of the truth when applied to the individual. This fact must necessarily be recognized in applying the rule of reasonable conduct to infants. If an infant of seventeen years of age, by reason of natural or artificial causes, has acquired the capacity for observation, reasoning and action of the average prudent adult, this circumstance places him on a parity with the latter. Likewise if his development has progressed only to the stage of the average fourteen year old boy, that circumstance bears on what should be deemed to be reasonable conduct on his part. In other words the fundamental rule of reasonable conduct remains constant, but the circumstances of the age and stage of development of the individual in the process of his growth during his minority are important considerations in applying the rule.

The understanding of this court that the general standard of care governing the conduct of adults, namely, reasonable care under all the circumstances, applies as well to minors as to adults, and that infancy and want of experience of the latter are merely evidential factors to be weighed with the other circumstances, is made plain in *Goodale* v. *York*, 74 N. H. 454, 456 and *Kambour* v. *Railroad, supra*, 51. In the former we are told that ". . . it cannot be said that the ordinary man would not have attempted such an act, if he had no more knowledge of the situation and no more capacity to comprehend its dangers than the plaintiff [aged 16] is shown to have had." In the latter case it was said "It does not necessarily follow from the fact that the ordinary man would not have jumped from the train in the way and at the time the plaintiff [aged 14] did, if he had no more

cause for doing it than the plaintiff is shown to have had . . . that it can be said the plaintiff was guilty of contributory negligence as a matter of law, for he was a mere child with but little experience in riding on the railroad." *Kambour* v. *Railroad*, 77 N. H. 33, 51. Likewise in the cases hereinbefore reviewed, it is plain that the court was not setting up a special standard of care required of infants, but was addressing its attention in each case to the consideration by which the triers of fact were to be governed in applying the general standard to the facts of age and experience there in evidence. In other words the reasoning and the conclusion reached in each of the cases proceed on the theory that in applying the universal rule of reasonable conduct the circumstance of subnormality, by reason of nonage, or want of development if it exists, are but facts to be weighed with the other circumstances.

This is consonant with our treatment of the physical infirmities of adults. Ordinarily we do not take into consideration their mental incapacity short of insanity. But their physical defects are circumstances to be considered in the application of the rule. *Sleeper* v. *Sandown*, 52 N. H. 244, 252, 253; *Daniels* v. *Lebanon*, 58 N. H. 284; 14 L. N. S. *note* 643; 41 Harv. L. Rev. 13-15. This is because their physical impairments, unlike their mental defects, are susceptible of ascertainment and not because the latter are logically irrelevant. An exception is made in favor of infants because their normal condition is one of incapacity and the state of their progress toward maturity is reasonably capable of determination. So far as defects, whether of adult or minor, can be reasonably ascertained and judged the law recognizes them. As in the case of the physical defect of the blind or one-legged adult, so the mental incapacity imputable to the minor, being deemed capable of proof, is recognized as a factor to be weighed in appraising the character of his conduct. 37 Yale L. Rev. 621. Reasonable conduct is alike demanded of both. The rule of reasonable conduct is constant but the reasonably ascertainable defects of the actor, whether adult or minor, are circumstances to be considered in its application. In neither case does the law make any distinction between the conduct of an actor when charged with actionable fault and when charged with contributory negligence.

The supplementary instruction here, following a statement of the general rule of care, by which the jury were told that "in judging of the conduct of the defendant . . . his conduct should be judged according to the average conduct of persons of his age and experience" was a plain statement that they were to consider these factors in ap-

plying the rule already stated. The fact that in repeating the thought the application of these factors was spoken of as "the standard" could not have misled or confused the jury.

If, however, the jury could have understood the direction as to the application of the rule as setting up a special standard as to infants, it could not have affected their conclusion. The last sentence of the instruction at most purports to read into the rule of reasonable conduct the material circumstances of nonage and want of experience, leaving the rule, as thus modified, to be applied to the further material circumstances in evidence. It merely transferred from one side of the equation to the other an evidential fact; that is, it adds to the rule one of the items in evidence and subtracts it from the items properly to be considered in its application. The fact that such an instruction disregards the process of reasoning by which we arrive at the distinction between the rule and the factors to be considered in its application is of no controlling importance to the jury. It makes no difference to them whether the reason why they are to consider the factors of age and experience in judging the conduct of a minor is because such requirement is of the substance of a rule of law or is one incident to its application. As important as such distinction is to the court here in fixing the singleness and universality of the legal standard of care, any statement to the jury of the course of reasoning by which it is reached would have been of doubtful helpfulness to them. *Dervin v. Company*, 81 N. H. 108, 114.

*Judgment for the defendant, Elwood F. MacRury.*

All concurred.

ON REHEARING.

*John W. Perkins*, for the motion.

*Hughes & Burns*, opposed.

SNOW, J. Attention is called to our omission to deal with the plaintiff's claim in argument that all operators licensed under P. L., c. 101, ss. 1, 2, 3 are held to the same degree of care. This statute prohibits the operation of a motor vehicle without a license (s. 1), provides for the issuance of a license upon application and proof to the satisfaction of the commissioner that the applicant is a proper

person to receive it (*s.* 2) and forbids the issuance of a license to any person under sixteen years of age, *s.* 3. The plaintiff's contention is based upon a misconception of the design and purport of these provisions. The purpose of the legislature was the protection of the traveling public. This is accomplished by imposing certain positive limitations of the right to operate cars upon the public highways. *Johnson* v. *Railroad,* 83 N. H. 350, 359-361. Sec. 3 is a legislative declaration that minors under sixteen years of age are incompetent to operate such vehicles, and arbitrarily denies them the right. Sec. 2 provides a means of assuring a minimum capacity in drivers of motor vehicles by denying the right to all eligible applicants who do not pass the test, whether adults or minors above the prohibited age. The legislature has not declared that all successful applicants shall be deemed to be of equal capacity and discretion in operating a vehicle. It has not undertaken to deal with the rule of care at all. It neither expressly or impliedly authorizes the trier of facts to disregard the legally ascertainable defects of the actor when material to the issue of his reasonable conduct, whether he be an adult or a minor. The authorized license is not a certificate of the physical perfection of the adult or of the mental maturity of the eligible minor. That the legislature did not intend the latter is demonstrated by a later provision in the same chapter (*s.* 14) which limits the issuing of licenses to chauffeurs (*i.e.* operators of cars of others for hire, P. L., *c.* 99, *s.* 1, III) to persons exceeding eighteen years of age. Had the intention been to modify the rule of reasonable conduct in the vital respect claimed by the plaintiff more appropriate words would have been used.

*Former result affirmed.*

All concurred.