94 P.2d 706

**ARCHULETA v. JACOBS.**

No. 4433.

Supreme Court of New Mexico.

Oct. 16, 1939.

Board of Education to transport to and from their "destination" the children attending one of the district schools of the county. The accident occurred when the child was being returned from school and immediately after she had been discharged from the bus and at the place where she had been accustomed to take and leave the conveyance over a period of several weeks and during the time she had been attending the school in question. The discharging zone, or location, was on the west side of the road and directly opposite the child's home. The home stood back from the road some 40 to 50 feet from the highway which ran north and south, and which had a width at the place of some 25 to 30 feet, probably 18 feet of which was surfaced and oiled.

The deceased was struck by this car approaching from the south, after she had left the point of discharge and when she was endeavoring to cross to her home, and immediately after the bus had left the scene.

Judgment was rendered for plaintiff and defendant prosecutes this appeal.

W. C. Whatley, of Las Cruces, for appellant.

T. B. Rapkoch and J. B. Newell, both of Las Cruces, for appellee.

MABRY, Justice.

The administrator and appellee, hereinafter called plaintiff, sued appellant, hereinafter called defendant, to recover for the alleged wrongful death of one Carolina Archuleta, the seven and one half year old child of the administrator.

The child was killed by a passing car immediately after having been discharged from a school bus operated by defendant under contract with the Dona Ana County

A number of questions are presented, the principal one being that raised upon motion for directed verdict and judgment non obstante veredicto, based upon the ground that plaintiff had not made out a case of negligence against defendant. Defendant disclaims all liability for the injury, and claims that it was caused by the child's own negligence, her contributory negligence, by the negligence of her mother calling to the

child while in the highway endeavoring to cross, which act of the mother, he claims should be imputed to the child, or that it resulted from the negligence of a third person, one Lewis, the driver of the north bound car which struck the deceased.

Additional assignments go to the question of improper refusal of requested special findings and of requested instructions, and the giving of improper instructions of the court's own motion. Others point to certain special findings of the jury claimed to be in conflict with the general verdict by showing the injury resulted because of the child's own negligence or through that of another not the defendant.

The driver of the bus was under contract with the County Board to transport the children of the district to and from school. Whether the contract was in writing does not appear, nor are any details showing any specific contractual duties of the bus operator to be found in the evidence. There were no officially posted or marked loading or discharging zones, but all children, including the deceased, were, as a matter of practice and custom, taken on and discharged at certain well known and designated points along the highway. The defendant had at no time been required to discharge nor had he at any time discharged the deceased at any other point than the one used on this occasion.

The question of the alleged negligence arises under circumstances which plaintiff claims imposed upon the driver the duty of exercising that highest degree of care

and caution, which he did not observe. The particular circumstances relied upon to establish negligence were that the Lewis car traveling north was near enough to the bus at the time it made its regular stop to discharge the deceased that she should not have been permitted to alight until the car had passed, or that the driver should himself have seen her safely across the highway to her home.

Much stress is placed by plaintiff upon his allegation in the complaint that the proof which he claims supports it, that defendant, after discharging the child upon the highway and while she was going around the bus, and upon the highway, "negligently and carelessly started away from the place where he had stopped without first seeing the child was safely delivered to her destination", and without warning her of the approaching car which he himself could see. Plaintiff contends that the duties of the driver under these particular circumstances, being held to the highest degree of care, did not cease until his passenger had made her safe departure from the vicinity of the stop.

Defendant by his motions for judgment at the close of plaintiff's case, at the close of the whole case, and thereafter for judgment non obstante veredicto, challenges the evidence as being insufficient to sustain the verdict.

 We thus examine the evidence in a light most favorable to plaintiff. Without undertaking here to detail the testimony it may be said that the following is a fair statement of the facts:

The driver of the bus had no contract to see each child safely home but it was his duty under the terms of his employment to safely convey to and discharge his passengers at their respective destinations, at the loading and discharging points along the highway. The question is, what constitutes a "safe discharge" at the destination? There were fixed places along and upon the highway where defendant took on and discharged all the children of the district using the service. The deceased was discharged at the place fixed and where she had at all times theretofore been let out, and the driver, as usual, upon the day in question drove off, or nearly off, the highway, to his right and upon the shoulder of the road and into a place wide enough to permit his car to practically leave the paved portion of the highway before stopping and permitting the child to alight. Although this was upon a heavily traveled transcontinental highway, with a clear view from the point both to the north and the south of about one mile, at the moment of the discharge of deceased there was but little traffic, only one car being in sight, and that being the Lewis car, approaching from the south but quite near and at a distance of perhaps less than 300 feet and traveling at a speed of from 35 to 40 miles per hour and in its regular lane of travel. The child was discharged from the right side of the bus, which was traveling south, and a few feet off the west edge of the 18 foot oiled portion of the highway. Defendant warned the deceased to be careful in crossing the road, but said nothing about the one approaching car. The child was seven and one half years of age, was mentally alert for a child of her years. She was accustomed to avoiding traffic at the point and knew the danger attending a crossing of this much traveled north and south highway. At all times therefore she had been known to exercise reasonable caution in making the crossing to her home. After the child was discharged from the bus, the driver, cutting back upon the highway, started out slowly, going some distance in low or second gear. He passed the Lewis car a few hundred feet down the road, the defendant claims, but evidence of plaintiff shows that the passing might have been about 50 feet from the place of discharge. We must accept the latter distance, though the testimony on that was not so clear and satisfactory. The child was struck by the Lewis car approximately at the point of her crossing, but off the highway some three feet and toward the east and on her home side of the road. The Lewis car had left the main part of the traveled highway, turning off to his right a few feet before reaching the point of collision.

The evidence is not clear whether the child ran into the Lewis car or was run over by it in her attempt to get out of the way. There is conflict here, but it is undisputed that the collision occurred after she had almost, if not entirely, negotiated the crossing.

The bus used was of the ordinary small type, with a measurement of only 11 feet for the bus part proper. The motor was of the ordinary small car type, recently re-built and producing only the usual motor noises.

The jury by its answer to certain special interrogatories propounded found, in sub-stance, that the child was mentally capable of knowing and appreciating the dangers attendant upon an attempted crossing of the highway in question, and the evidence as well shows that she was quite mentally alert for a child of her age, and did know and appreciate the dangers there to be avoided since she had constantly faced them each day for some weeks prior. De-fendant urges that such evidence and find-ings, together with answers to certain other special interrogatories which he in-terprets as fixing the proximate cause of the accident and consequent injury upon the negligence of the child herself or upon that of the said Lewis, the driver of the car approaching from the south, presents questions which must, when correctly de-termined, absolve defendant of any neg-ligence.

■ It is pointed out by the authori-ties generally that usually in the case of a child as in that of an adult, it becomes a question of fact for the jury whether such child in using the street and meeting auto-mobile travel hazards exercises such care in protecting itself from injuries as can be reasonably expected on the part of one of its age, judgment and experience.

See Vol. 2, Blashfield's Cyc. of Automo-bile Law and Practice, Permanent Edition, § 1528. Defendant did not owe the exact duty imposed upon a common carrier, no doubt. That would have required the ex-ercise of the "highest degree" of care. 4 R.C.L. 1144, Par. 585. He was not a com-mon carrier. See Sec. 25, Chap. 154, Ses-sion Laws of 1933; Shannon v. Central-Gaither Union School District, 133 Cal. App. 124, 23 P.2d 769; Gaudette v. Mc-Laughlin, 88 N.H. 368, 189 A. 872; Ham-mond v. Wacker, 107 N.J.L. 438, 154 A. 735; Burnett v. Allen, 114 Fla. 489, 154 So. 515.

He did owe the duty of exercising every reasonable precaution, or ordinary care un-der the circumstances, for the children's safety. Burnett v. Allen, supra.

■ It cannot be said, however, that the driver of a school bus may be held to no further duty than that of safely depositing his charge at the customary unloading zone, when circumstances would indicate to a reasonably prudent person that a child of tender years might proper-ly require the further precaution of super-vision and direction in its departure from the vicinity of the stop. There can be no formula to fit all facts. Efforts to de-vise one invariably bring us back to this simple statement of the rule: "Ordinary care under the circumstances."

So, we are presented with the query: Had defendant fully performed his duty when he discharged the child at the un-

loading zone, without warning of the approach of an automobile which he admits he saw, and which by reasonable and natural inference from the evidence the jury could have believed was nearly upon the child and too close to have avoided striking her regardless of precaution used, when she had passed around the rear of the bus and into view to start across the road? We answer with another query, viz: Was not the question one for the jury? We think it was.

It was said in the case of Burnett v. Allen, 114 Fla. 489, 154 So. 515, 518:

"By assuming to perform the contract alleged in the declaration, the defendant, by necessary implication, assumed to perform every act, reasonably necessary for the safety of the children intrusted to his care while in transportation, which would include the operation of safely receiving the children into the bus and in superintending and directing their safe exit from the bus and their safe departure from the bus.

"The bus driver who contracts to furnish transportation and to transport school children from places at or near their residences to public free school becomes a special contractor for hire, and his contract of employment with the Board of Public Instruction becomes a contract with him made by the Board of Public Instruction for the use and benefit of each and every of those persons who are to be transported by him under the contract. As the contract contemplated the transportation of children who are incompetent to be charged with the assumption of risk because of their tender years and inexperience, it likewise contemplates, and by implication at least binds, the person contracting to furnish and conduct the means of transportation to use every reasonable precaution and care for the safety of such children and to prevent any harm or damage coming to them, either in approaching the bus, or while riding in the bus or when alighting from and leaving the immediate proximity of the bus at the completion of their journey, or at any time during the journey. Whether a person contracting and performing such a contract has used all such reasonable care and caution is a question for the determination of a jury in each case."

The Florida court took notice of the fact that there "may be" some conflict in authorities upon the question of liability of a contracting school bus driver in cases of this kind, but observed that the weight of authority undoubtedly sustained the view as above stated, citing the following authorities:

"Shannon v. Central-Gaither Union School District [133 Cal.App. 124], 23 P. 2d 769; 45 C.J. 702; Marion County v. Cantrell [166 Tenn. 358], 61 S.W.2d 477, and cases cited; Machenheimer v. Falknor, 144 Wash. 27, 255 P. 1031; Embody v. Cox, 157 Wash. 464, 289 P. 44; * * * Phillips v. Hardgrove et al., 161 Wash. 121, 296 P. 559; Cleveland-Akron-Canton

Bus Co. v. Walker, 30 Ohio App. 411, 165 N.E. 373; Mayhew v. Ohio Valley Elec. R. Co., 200 Ky. 105, 254 S.W. 202."

It is a question for the determination of the jury, the court said in the early case of Williams v. Board of Trustees, 210 App.Div. 161, 205 N.Y.S. 742, which likewise involved the question of whether the contractor transporting school children (in this case it was in an old fashioned platform spring wagon), had exercised reasonable care and precaution in transporting and discharging them.

Ordinary care under all the circumstances seems to be the test properly to be employed according to the better rule. This was announced in Gaudette v. McLaughlin, 88 N.H. 368, 189 A. 872. Likewise in the case of Shannon v. Central-Gaither Union School District, supra. This, it may be said, is the test generally employed in cases of this character where children are concerned, as it is in cases dealing with adults.

"The law of negligence has for its foundation the rule of reasonable conduct * * * this is the true test or measure in all cases." Charbonneau v. MacRury, 84 N.H. 501, 153 A. 457, 462.

■ We hold that defendant owed to the child the duty, not merely to carefully transport and discharge it at the usual unloading zone, but he had cast upon him the additional duty of exercising every reasonable precaution under the circumstances to prevent harm to her while alighting from and leaving the immediate vicinity of the bus at the end of her journey. It thus became a question for the jury, and the jury by its verdict determined that the defendant did not exercise such precaution. The evidence of the fast and near approach of an automobile which the child might not have seen, and probably did not see, until she was upon the highway and when it was too late for her to decide upon what conduct would better conduce to her safety, was of itself sufficient to make the alleged negligence of defendant an issuable fact for the jury.

■ We hold there was substantial evidence to support the verdict.

The trial court in instruction No. 9, after laying down the correct rule in the early part of the instruction defining negligence as it applied to defendant, to be the want of ordinary care, that is, "such care as an ordinarily prudent person would exercise under like circumstances", added this language: "And in connection with these definitions you are instructed that the driver of a school bus transporting children of tender age owes to them the *greatest degree* of care for their safety, and such course of conduct should extend from the time the children board such bus, and during their transportation to their destination, and including the alighting therefrom by such children under circumstances to insure their safety in leaving the immediate scene of the bus stop * * *". (Italics ours)

There was an objection and exception to the giving of this instruction upon the ground that it placed an undue burden upon defendant. "Why", he inquires, "should defendant be held to this 'highest degree' measure of precaution?" Should not defendant be held to the exercise of only such care and caution as is universally required in such cases, whether one be dealing with children or adults—that is, ordinary or reasonable care under the circumstances? See 45 C.J. 680, Par. 50 and 51, with numerous citations; Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S. Ct. 679, 36 L.Ed. 485; Santa Fe, P. & P. Ry. Co. v. Ford, 10 Ariz. 201, 85 P. 1072; Planters' Warehouse & Compress Co. v. Taylor, 64 Ark. 307, 42 S.W. 279.

The test of care is not whether in degree it should be slight, ordinary or extreme care, but commensurate care, due care under the circumstances. Cates v. Hall, 171 N.C. 360, 88 S.E. 524; Fitzgerald v. Southern R. Co., 141 N.C. 530, 54 S.E. 391, 6 L.R.A.,N.S., 337.

"There can be no degrees of duty. Duty is an absolute term. The law requires nothing more than duty; it will excuse nothing less." Union Traction Co. v. Berry, 188 Ind. 514, 520, 121 N.E. 655, 657, 124 N.E. 737, 32 A.L.R. 1172.

"'A high degree of care' is not the legal equivalent of reasonable care." Gellatty v. Central R. Co., 86 N.J.L. 416, 92 A. 279.

"The law of negligence is not based upon the highest possible degree of care, nor even the degree of care which a highly prudent person would use, but upon the average of reasonable care—the degree of care that 12 men, selected at random from the vicinage, will say is reasonable under all the circumstances." Spannknebel v. New York, etc., R. Co., 127 App.Div. 345, 111 N.Y.S. 705, 707.

"The use of such terms as 'slight care,' 'great care,' 'highest degree of care,' or other like expressions in instructions * * * is misleading * * *. The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured, and that is the care which a person of ordinary prudence would exercise under like circumstances." Union Traction Co. v. Berry, supra.

By the great weight of authority the legal measure of duty, except that made absolute by law, in nearly all legal relations, is better expressed by the phrases "due care", "reasonable care", or "ordinary care", terms used interchangeably. Raymond v. Portland Ry. Co., 100 Me. 529, 62 A. 602, 3 L.R.A.,N.S., 94.

The degree of care does not vary with the increase or diminution of danger. It continues to be ordinary in degree, but the quantum of diligence to be used differs under different conditions. Gulf, C. & S.

F. Ry. Co. v. Smith, 87 Tex. 348, 28 S.W. 520.

An instruction to the effect that a defendant should be held not liable if it be found that "everything was done that could be done by the defendant to avoid * * *" the collision was held erroneous in Cohen v. Weinstein, 231 Ill.App. 84, as not representing the proper measure of caution.

■ The civil law recognizes three degrees of diligence, viz., ordinary diligence, extraordinary diligence, and slight diligence. 45 C.J. 680, Par. 50. And, this distinction is recognized in some jurisdictions where degrees of negligence are recognized. This distinction is not recognized here. Thayer v. Denver & Rio Grande R. Co., 21 N.M. 330, 154 P. 691.

"However, in the ordinary case of negligence, involving no statutory regulations or contractual obligations with respect to the degree of care, there is a strong trend of judicial opinion against recognizing any classification of care into degrees, corresponding to the tendency to refuse to recognize the existence of degrees of negligence, the view being taken that whatever degree of vigilance, caution, and skill the circumstances may demand, the exercise thereof is merely ordinary care." 45 C.J. 680. citing numerous authorities.

■ Of course, the character and quality of performance required to be exercised in dealing with a minor, and likewise the character and quality of performances by which a minor's conduct is itself measured, in personal injury cases, must vary according to the circumstances; yet, there still remains in cases of this character, one method by which to gauge it: Ordinary, reasonable, or due care under the circumstances. See the case of Charbonneau v. MacRury, 84 N.H. 501, 153 A. 457, for a very scholarly and illuminating discussion of the question of ordinary care and caution as it applies both to an infant's own conduct and the conduct of one toward an infant.

■ We cannot escape the conclusion that this instruction of the court cast upon defendant an undue burden, and that this constitutes reversible error. It cannot be said that the law may apply to the conduct of the plaintiff's deceased the rule of "ordinary care" only, and then say, as was said in substance, in these instructions, that as to defendant, his conduct must be such that everything "possible to be done" must have been done by him to avoid injury to the deceased, if he is to escape liability.

Of course we know that the amount or degree of diligence and caution which is necessary to constitute due, reasonable or ordinary care changes with changing conditions, and we find wide variations according as circumstances in some instances require greater vigilance and caution than in others (Morris v. Florida Cent. & P. Ry. Co., 43 Fla. 10, 29 So. 541; Caven v. Bodwell Granite Co., 99 Me. 278, 59 A. 285; Medlin v. Spazier, 23 Cal.App. 242, 137 P. 1078) and yet the law has found

the foregoing and universally approved definitions sufficiently flexible and reliable for use as a guide in all such cases.

It is also true, of course, that the age of a child and its ability to look out for itself and capacity to appreciate danger are always a proper matter for consideration in determining whether proper care has been exercised as to such child. Conduct that might easily qualify as ordinary and prudent care as to a child of one age, and with capacity to understand and appreciate danger, might easily fall short of such classification with reference to a child of more tender years and of less understanding and appreciation of danger. See Fisher v. Burrell, 116 Or. 317, 241 P. 40; Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S.W. 199; Arkansas Valley Trust Co. v. McLlroy, 97 Ark. 160, 133 S. W. 816, 31 L.R.A.,N.S., 1020; Rosenberg v. Durfee, 87 Cal. 545, 26 P. 793. And yet, we still measure the care required by the one standard, viz., "What would a reasonably prudent man do under like circumstances?"

Other error is assigned and argued, but no additional questions need be decided in view of the disposition we must make of the question just discussed.

For the reason stated the cause will be reversed with instructions to grant a new trial, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.